FISHBECK, Respondent, vs. NEW YORK LIFE INSURANCE COMPANY, Appellant.

*December 7, 1922—January 9, 1923.*

*Insurance: Action on policy: What law governs: Statements in application: Representations or warranties: Laws of Oklahoma: Question for jury: Instructions.*

1. An action on a life insurance policy is governed by the law of the state where the application was made, the policy delivered, and the premiums paid, and in which state the insured resided at the time of his application.
2. Evidence that insured was apparently a healthy man at the time he applied for the policy and that tests for tuberculosis had given negative results, but that he had suffered from bad colds and attacks of so-called asthma, which were at-

tributed to his occupation, is *held* to sustain a finding of the jury that a representation made by him in his application that he had had no disease of the lungs was not false.

3. Where the evidence was undisputed that insured had consulted physicians several times within five years before he made his application, evidence as to the nature of the disease for which the physicians were consulted is *held* to warrant a finding in the special verdict that insured had not consulted a physician for any "serious" disease during the five years.

4. Under the laws of Oklahoma (in which state the insured resided at the time the application for insurance was made) as construed by the courts of that state, a representation that an applicant for life insurance had not consulted a physician during the past five years refers only to consultation for a serious disease, so that it was not error, in an action on a policy governed by the laws of that state, to submit to the jury the question whether a physician had been consulted for a "serious" disease, though it was undisputed that applicant had consulted physicians.

5. An instruction with reference to the consultation of the insured with physicians for a serious illness, which defined a serious illness as one which permanently or materially impairs or is likely to impair the health of the person affected by it, and that an illness may be alarming at the time and considered serious by the one affected by it and yet not be so in fact, is correct under the law of Oklahoma.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to recover on a life insurance policy for $3,000. The policy was issued on May 11, 1918, in the state of Oklahoma. The death occurred on June 16, 1919, in Phoenix, Arizona.

The answer admitted payment of the premiums, proof of death, and demand for payment, and alleged that in the application for insurance deceased stated that he had never suffered from any ailment or disease of the lungs and had not consulted or been treated by a physician within the last five years preceding the application; that in the application deceased declared that all his statements and answers were made by him to obtain the insurance and that it was under-

stood and agreed that all such statements and answers were material to the risk and that defendant would rely on them; and that such statements were fraudulent and untrue.

The answer further alleged that the application provided that the policy applied for should not take effect unless it was delivered to and received by the insured during his life and good health; and that at the time of the delivery of the policy the insured was not in good health. Defendant then set out the law of Oklahoma and alleged that the statements to the effect that the deceased had never suffered from any ailment or disease of the lungs, and to the effect that he had not consulted or been treated by a physician within the last five years, were untrue, wilfully false, fraudulent, misleading, and made in bad faith, and that the policy was void. Tender was made of the amount of the premiums paid, with interest.

The application for the policy was made May 6, 1918. The application shows the following questions and answers, among others:

"Have you ever suffered from any ailment or disease of the heart or lungs? No. Have you consulted a physician for any ailment or disease not included in your above answers? No. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? (If none, so state) None."

Defendant introduced evidence tending to show that between 1910 and 1918 deceased had been treated on an average of once a month by a chiropractor for asthmatic trouble and that at one time he had been in a hospital for four days to facilitate the treatment; that between 1910 and 1917 he had been treated by a Dr. Earnheart two or three times a year for asthma, and that his sputum had been examined for traces of tuberculosis; that in November and December, 1917, deceased had been administered ten doses of serum for asthma; that a Dr. Clymer had treated him

four or five times for asthma in 1917 and up to July, 1918; and that about ten days before deceased made application for insurance Dr. Thomas had given him a serum for the same trouble.

It appears that shortly after the policy was issued deceased and his wife went to a point on the Gulf of Mexico, returned to Oklahoma City, and then went to Denver, apparently to improve his health; that they returned to Oklahoma City in July, 1918; and that in the same month deceased had a radiograph taken of his chest, which, according to the testimony of one of the doctors, showed that both lungs showed traces of tuberculosis; and that deceased was told of this condition. In the latter part of the month he went to Arizona, where he spent a good part of his time camping. In October and again in December he suffered an attack of influenza. In December he went to Phoenix, Arizona, and remained there under the care of doctors until his death in June, 1919. The proofs of death stated that insured died of pulmonary tuberculosis and endocarditis.

Plaintiff introduced testimony to the effect that deceased had always been strong and healthy, but that he had often suffered from colds; that his colds and coughing spells were caused by the dusty atmosphere in which he was accustomed to work in a machine shop.

The special verdict contained the following questions and answers:

"(1) Did Arthur Fishbeck ever suffer from any ailment or disease of the lungs before he signed the application for the policy in suit on May 6, 1918? _A._ No.

"(2) If your answer to the first question be 'Yes,' then answer this: At the time when Arthur Fishbeck signed said application did he know that he had suffered from disease of the lungs? Not answered.

"(3) If your answer to the second question be 'Yes,' then answer this: Was the representation which Arthur Fishbeck made in his said application to the effect that he had never suffered from disease of the lungs made by him

intentionally for the purpose of deceiving and defrauding the insurance company by inducing it to issue to him the policy in suit? Not answered.

"(4) Had Arthur Fishbeck consulted or been treated by a physician for any serious illness or ailment within the five years immediately preceding the date of said application? *A.* No.

"(5) If your answer to the fourth question be 'Yes,' then answer this: Was the statement by Arthur Fishbeck in said application to the effect that he had not consulted or been treated by a physician for any ailment or illness within said five years made by him intentionally for the purpose of deceiving and defrauding the insurance company by inducing it to issue to him the policy in suit? Not answered.

"(6) At the time when said policy was delivered to Arthur Fishbeck on or about May 15, 1918, was he then in good health? *A.* Yes.

"(7) In issuing said policy, did the defendant company do so in reliance on the truthfulness of the statements or representations in the application which are specified in the third question and the fifth question?

"As to the representations specified in the third question, we answer 'No.'

"As to the representations specified in the fifth question, we answer 'No.'"

Judgment was rendered in favor of the plaintiff for $3,469.48.

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Bert Vandervelde,* all of Milwaukee.

For the respondent there was a brief by *Hougen, Brady & Meyer* of Manitowoc, and oral argument by *A. L. Hougen.*

JONES, J. This action is governed by the law of the state of Oklahoma and not by the law of this state. The application was made in Oklahoma where the insured resided. The policy was delivered to him in that state and in that state he paid the premiums. The law of Oklahoma was

pleaded by defendant; the decisions of that state were of-
fered in evidence and parol testimony by a lawyer familiar
with the laws of Oklahoma was given as to their construc-
tion.

The statute in force when the application was made was
sec. 3467, Rev. Laws 1910, and was as follows:

"In any claim arising under a policy which has been issued
in this state by any life insurance company, without previous
medical examination or without the knowledge and consent
of the insured, or in case said insured is a minor, without
the consent of the parent, guardian, or other person having
legal custody of said minor, the statements made in the
application shall, in the absence of fraud, be deemed
representations and not warranties: Provided, however, that
the company shall not be debarred from proving as a
defense to such claim that said statements are wilfully false,
fraudulent or misleading; and provided, further, that every
policy which contains a reference to the application of the
insured, either as a part of the policy or as having any
bearing thereon, must have attached thereto a correct copy
of the application, and unless so attached the same shall
not be considered a part of the policy or received in evi-
dence."

The policy provided in part as follows:

"The policy and the application therefor, a copy of which
is attached hereto, constitute the entire contract. All state-
ments made by the insured shall, in the absence of fraud,
be deemed representations and not warranties. . . ."

We refer to the following decisions of the supreme court
of Oklahoma as illustrations of the manner in which the
statute is construed in that state:

In *Eminent Household of Columbian Woodmen v. Prater*,
24 Okla. 214, 103 Pac. 558, the policy was issued before
the enactment of the statute and the statements in the ap-
plication were made warranties. The insured stated that
she was never seriously ill, and when asked the name and
address of attending physician answered "None." It ap-
peared that about a year and a half before the policy was

issued a physician had been called, and he testified that at that time the insured was very sick; that she suffered from profuse hemorrhage; and there was evidence that she continued in a state of impaired health up to the time of her death; but there was other testimony to the effect that after the attack she seemed in good health. It was held that it was for the jury or court to whom the case was submitted to decide whether the illness had been serious, since the question in the application did not call for information as to the last illness but the last serious illness. It was said in the opinion (p. 217):

"An illness that is temporary in its duration, and entirely passes away, and is not attended, nor likely to be attended, by a permanent or material impairment of the health or constitution, is not a serious illness. It is not sufficient that the illness was thought serious at the time it occurred, or that it might have resulted in permanently impairing the health."

The court held, however, that certain statements in the application were warranties, and the judgment of the trial court was reversed.

In *Continental Cas. Co. v. Owen,* 38 Okla. 107, 131 Pac. 1084, the construction of the statute was involved. The insured stated in the application:

"Except as here stated I have not had nor am I now suffering from tuberculosis, rheumatism, paralysis, nor any chronic, periodic, mental or physical ailment or disease, nor have I any defect in hearing, vision, mind, or body."

The undisputed testimony showed that about a month before the application was made the insured suffered from nephritis. There was a sharp conflict as to whether the disease was chronic or acute. The court held that it was for the jury to determine that question and also whether the insured had a defect of body, and the court adopted the language of the former decision quoted above. It was held that it was the purpose of the statute to strike down

warranties in insurance policies of this class and to provide a rule of construction for the purpose of preventing injustice. The court said (p. 119):

"Under our statute such statements must be construed as representations, and in order for misrepresentations in relation thereto-to avail the insurer as a defense, it must show that they were wilfully false, fraudulent, or misleading."

In *Owen v. U. S. Surety Co.* 38 Okla. 123, 131 Pac. 1091, it appeared that the policy sued on was dated eight days subsequent to another policy issued to the insured by another company. It was held that the statement of the insured that he held no other insurance did not "sustain the charge of fraud by such a preponderance of the evidence as to overcome all opposing evidence and repel the opposing evidence of good faith on the part of the assured." Page 128.

The decision in the case last above quoted was approved. The court said (p. 127):

"In this jurisdiction, where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith."

The court further said (p. 128):

"The statement attributed to the insured, which it is alleged was false, was made eight or ten days subsequent to the issuance of the policy by the Maryland Casualty Company. To merely show the issuance of that policy does not to our mind sustain the charge of fraud by such a preponderance of the evidence as to overcome all opposing evidence and repel the opposing evidence of good faith on the part of the assured."

In *Springfield F. & M. Ins. Co. v. Null,* 37 Okla. 665, 133 Pac. 235, there had been made an untrue statement. When it was claimed that a false and fraudulent statement had been made it was held that the burden of proof is upon

the company to establish the materiality of the alleged false statement or concealment, as well as the fraudulent intention of the insured. Where the evidence is conflicting, or where different inferences may be legitimately drawn from the evidence, the question should be submitted to the jury under instructions which take into consideration the materiality of the misrepresentation and the fraudulent purpose or intent of the insured to deceive, and the court said (p. 669), quoting from a former decision:

"The burden of proof to establish the materiality of a misrepresentation or concealment as well as the fraudulent intent of the insured, is upon the insurance company, and the burden is not shifted where it is shown that the insured made an untrue answer concerning other insurance; for, if there be a presumption that his failure to mention it was intentional, this is met by the presumption that a man does not make a fraudulent misstatement, and the question is therefore for the jury, upon all the evidence."

In *National Union v. Kelley,* 42 Okla. 98, 140 Pac. 1157, under the policy the answers made were warranties. The insured stated that he had had medical advice during the last five years, but that he had never had, among other diseases, cancer or tumor, and he warranted the answers to be true. There was testimony of a physician that he had informed the insured about two years before his death that he had enlargement of the spleen; that he had certified to the insurance company that the death was caused by cancer of the stomach. There was testimony for the plaintiff that the deceased had worked steadily until about three weeks before his death and had seemed to be in good health. The trial court found that the statements in the application were made in good faith in the belief that they were true. In the appellate court it was held, after reviewing the unsatisfactory character of the testimony of the physician, that in view of the presumptions in favor of the truth of the answers of the insured and the correctness of the judgment of the trial court the judgment should be affirmed.

In *American Bankers' Ins. Co. v. Hopkins* (Okla.) 169 Pac. 489, there was a clause in the policy that all statements made in the application should be deemed representations and not warranties. The defense interposed was that the insured had made false and fraudulent representations by giving false answers in the application, as follows: "*Q.* Are you in good health? *A.* Yes. Have you ever had tumor or cancer? *A.* No. Have you had any serious illness? *A.* No. *Q.* When did you last consult a physician? and for what? *A.* February 19, 1913, on account of fracture of arm;" that the insured at the time of making the answers was suffering from malignant cancer and had been so advised by her physicians; that she had been in a hospital for treatment for cancer a short time before making the application. The case seems to have been decided principally on the ground that the privilege statute prevented physicians from giving testimony as to communications with their patients with reference to disease or to the knowledge obtained by personal examination. We gather from the case that there was proof of the attendance by physicians at the hospital but that no testimony was allowed as to the nature of the disease. The court held, approving former cases, that the policy was contestable only for wilful misrepresentations.

In *Reserve L. L. Ins. Co. v. Isom* (Okla.) 173 Pac. 841, it was the defense that the insured made false statements as to having consulted a physician before the application, and as to his age. The wife of the insured testified that he had, a year or two before making the application for the policy, consulted two physicians for a slight indisposition, but that he went about his business as usual. The court held, in line with former cases, that the burden rested upon the insurer to show that such statements are wilfully false, fraudulent, misleading, and in bad faith. The trial court had directed a verdict for the plaintiff, and the supreme court approved this disposition of the case so far as related to the consulta-

tion with physicians, but held that on the issue as to the age of the insured there was evidence to take the case to the jury.

Counsel for defendant challenge the answer of the jury to the first question, in finding that the insured never suffered from any ailment or disease of the lungs before he signed the application on May 6, 1918, and it is claimed that the statement of the insured was false and fraudulent.

Although the deceased had suffered from attacks of asthma for nine years, there was no proof of tuberculosis in May, 1918, unless subsequent examinations and tests afford such evidence. Before the application there had been several tests of the sputum which showed negative results. July 22, 1918, an X-ray test was made and the physician who made the test gave as his opinion that the negative showed well developed tuberculosis which had existed for several months, or years. Two other physicians testified that the X-ray plates did not indicate active tuberculosis, and that the fact that several tests of the sputum made about the same time as the X-ray examination with negative results ought to be satisfactory evidence to the examining physician of the absence of tuberculosis.

A physician practicing in Arizona saw the insured very often after September 15, 1918. They went on hunting trips together until the deceased was attacked with the influenza. The doctor then examined him to see if there was tuberculosis or lung trouble and testified that the insured was not suffering from any disease or ailment of the lungs.

Under the decisions of the Oklahoma courts we are satisfied that there was such a conflict in the evidence relating to this answer that it should not be set aside. It may be added that if the jury had answered this question in the affirmative they would have been bound, under the testimony, in answering the next question, to say that the insured had no knowledge that he had suffered from any disease of the lungs. The testimony fails to disclose that he had any

notice of disease of the lungs, and so far as relates to this answer in the application fails to show any fraudulent representation.

A closer question is raised when we come to the consideration of the statements in the application that the insured had not consulted or been treated by any physician within the last five years. If the question whether there had been consultations or treatments had been submitted to the jury without the insertion of the word "serious," the answer would probably have been in the affirmative, since there was practically no conflict on this subject. As appears from the statement of facts, there had been numerous consultations and treatments extending back for about nine years.

On the other hand, there was a large amount of testimony that the insured was a man of unusual strength and energy; that during the nine years of labor for his company he had lost time from his work on only two occasions and for very short intervals; and that he worked long hours in a machine shop and garage, repairing gas engines and automobiles. His associates in the shop testified that during the whole period before the application was made he seemed in good physical condition, did not lose weight, had a good appetite, slept well, and was regarded as a strong and healthy man.

There was evidence that he had frequent colds, supposed to be due to the fact that he was in the winter subject to sudden changes from the warm air in the shop to testing cars in the street; that his exposure to the gas fumes, burning oil, and carbonized air from the exhaust of automobiles would bring on sneezing. There was much other testimony by relatives and members of the family that he was never sick until some time after the application for insurance and that he made no complaint except as to colds.

There was considerable testimony as to the nature and consequences of the ailment called asthma. One of the de-

fendant's witnesses gave it as his opinion that the asthma in this case was caused by tuberculosis of the lungs. Another of defendant's medical witnesses said:

"Asthma in itself doesn't mean anything. There are so many ·different kinds of asthma and so many causes back of it that to say one has asthma doesn't mean much."

The medical witnesses agreed that asthma in itself is not generally regarded as a disease likely to prove fatal, and that many people have asthma practically all their lives and live to be old. One of defendant's witnesses said:

"In fact I do not think he had asthmatic trouble in the last three or four years prior to 1918. He often expressed himself to me that he had practically recovered from the asthmatic attacks, and the indications warranted the assumption. He still had bad colds, and when he had a cold he came to me and I gave him a treatment. When he was overworked and tired, and in every instance, he always felt better after taking an adjustment. He would come in frequently when he didn't feel well, but had nothing specially the matter with him. Then I probably would not see him until he caught another bad cold and had been through a particularly hard day's work."

One of plaintiff's medical witnesses said:

"Asthmatic attacks can be produced in the bronchials of an ordinary, healthy individual by breathing the fumes in a garage from the exhaust of an automobile. In the ordinary, healthy individual, when he gets out of that environment his condition should be relieved. The causes of asthmatic attacks are dust fumes, different flowers and plants, a number of irritable things that some people are more susceptible to than others."

The physician who attended him in November and December, 1918, and after the two attacks of influenza made an examination at the time of his first attack and testified: "I never saw him when he had asthma nor did he give any history of asthma and I never found anything to indicate that he did."

The medical examiner of the company made an examination of the insured and reported that he found no indication of disease, past or present, and that his general appearance was healthy. We have stated and quoted parts of the testimony on this subject at considerable length because defendant's counsel claim that there was no question for the jury; that the ailment of the insured had continued so long and had been of such a nature that the court should have decided as a matter of law that the representations made were false and fraudulent.

It is further argued that the court raised an improper issue by placing the word "serious" in the fourth question submitted to the jury; that the questions in the application for insurance were so framed as to call for any and all consultations with physicians during the past five years, and that the jury should have been required to state whether the answers were true and without qualification.

The trial court evidently sought to apply the law of Oklahoma as declared by the statutes and judicial decisions of that state and he concluded that it did not imperatively follow that the policy was void because untrue statements had been made in the application. Under the law of Oklahoma these statements were not warranties but representations only, and there remained the question whether they were fraudulently made.

Under the law of that state the insured was not required, in answer to the questions, to state what medical attendance he had received for every ailment he may have had during the past five years, provided they were ailments which had readily yielded to treatment and were not likely to impair the general health; hence there would be no fraud in failing to disclose treatments for ailments of that character.

If the word "serious" had been omitted, following the suggestion of defendant's counsel, the answer of the jury to the fourth question would probably have been "Yes," and then they would have been required to answer whether

the statement in the application was made for the purpose of deceiving and defrauding the company. In arriving at a conclusion on the subject of fraud, the jury, under the instructions of the court based on the rule in Oklahoma, would have had under consideration the question whether the consultations with doctors related to ailments which were temporary, or were of a character likely to permanently or materially impair the health; in other words, whether they were serious in their nature. On this subject the trial court gave the following instruction:

"A serious illness is one which permanently or materially impairs or is likely to permanently or materially impair the health of the person affected by it. Whether the illness is or is not likely to have that effect in any given case is usually a question for the jury, and it is for the jury in this case. Not every illness is serious. An illness may be alarming at the time and may be thought to be serious by the one afflicted by it, and yet it may not be so in fact, in the sense of permanently or materially impairing his health. An illness that is temporary in its duration and which passes away and is not attended nor likely to be attended by a permanent or material impairment of the health or constitution, is not to be regarded as a serious illness. But if the illness is of a character which does actually or is likely to permanently or materially impair the health, then it is to be deemed a serious illness."

We believe that this instruction fairly expresses the rule derived from the Oklahoma decisions. As we read the statute and these decisions, it is the policy of the state to construe contracts of life insurance quite liberally in favor of the insured. In the execution of that general policy, statements in applications for insurance are by no means to be treated as warranties. In order to avoid forfeitures such statements are representations only and do not defeat recovery unless fraudulently made. The issue of fraud is for the jury to determine, and when a state of health becomes material that also is a jury question.

Doubtless there might be such a state of health that untrue answers in respect to it or as to medical attendance would, under the Oklahoma rule, require the court to assume the responsibility and decide the facts without the aid of the jury.   But in the instant case we think there was such a conflict in the evidence and enough · credible testimony in behalf of the plaintiff to warrant the submission of the case to the jury, and on the verdict of the jury, approved by the trial court, the judgment should stand.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.