520    SUPREME COURT OF WISCONSIN.    [JAN.

Maryland C. Co. v. Eagle River U. F. H. ·S. Dist. 188 Wis. 520.

MARYLAND CASUALTY COMPANY, Appellant, vs. EAGLE RIVER UNION FREE HIGH SCHOOL DISTRICT OF VILAS COUNTY, imp., Respondent.

*October 20, 1925—January 12, 1926.*

*Principal and surety: Bonds on public works: Contracts of sureties for compensation: Construction: When surety released: Breach of duty by indemnified: Payment in excess of contract provisions: Cost of completing building: Evidence.*

1. The provisions of sec. 3327a, Stats., pursuant to which the surety bond of a school-building contractor was furnished, entered into and became a part of the bond.   p. 523.
2. A surety contract entered into for a consideration by a surety company engaged in that business is in effect a contract of insurance, and is not to be construed according to the rules of law applicable to an ordinary accommodation surety.   p. 524.
3. Such a contract should no longer be construed strictly in favor of the surety, but the surety should only be discharged for breach of duty by the indemnified to the extent to which the surety has been damaged.   p. 526.
4. There being no provision in the bond or in the contract requiring notice, the school district is not bound as a matter of law to notify the surety of the financial embarrassment of· the contractor.   p. 528.
5. Where the contract between the school district and the contractor provided for the payment of ninety per cent. of the cost of construction on the certificate of the architect, but the school district, on the contractor's becoming financially embarrassed, advanced in good faith considerable sums in excess of such amount without the architect's certificate, such payment, though not according to the contract, did not relieve the paid surety company on the contractor's bond from liability on the bond, where it was not shown that the surety was injured or prejudiced by such payments.   p. 528.
6. Where an owner is called upon to complete the construction of a building upon default of the building contractor, proof of the amount expended by the owner is sufficient proof of the reasonable value or the reasonable cost of such construction in the absence of any showing to the contrary.   p. 529.
[7. Whether the provision of sec. 3327a, Stats., that modifications. or changes of the contract will not release the surety, is one for the benefit of laborers and materialmen and not for the benefit of the municipality, not decided.]   p. 528.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Affirmed.*

This is an action in equity brought by the surety on a contractor's bond for public improvement, against the obligee, the school district, the contractor and materialmen and labor claimants. On or about May 11, 1922, the *Eagle River Union Free High School District of Vilas County* entered into a contract with the Hub City Construction & Lumber Company by the terms of which the construction company agreed to erect a school building for said school district for the sum of $76,493. Payments were to be made "as provided for in said specifications and the balance when the building is all complete, and after the expiration of thirty days, and when all rubbish and waste materials have been removed and when all drawings and specifications have been returned to Parkinson & Dockendorff, architects. Provided, that in each case of said payments, a certificate shall be obtained from and signed by Parkinson & Dockendorff, architects, to the effect that the work is done in strict accordance with the drawings and specifications, and that they consider the payment properly due." The specifications referred to provided that "once in each and every month during the progress of the work, the owner shall pay to the contractor a sum equal to ninety per cent. of the value of the work done and material furnished during the preceding month, as assessed by the architects, and the balance thirty days after the completion of the work, according to these specifications. Provided that for each of said payments, the contractor shall obtain from the said architects a certificate signed by them, setting forth that said payment is properly due."

The building was to be completed March 1, 1923. The work of construction commenced about May 15, 1922. Very unsatisfactory progress was made with the work of

522    SUPREME COURT OF WISCONSIN.    [JAN.

Maryland C. Co. v. Eagle River U. F. H. S. Dist. 188 Wis. 520.

construction during the fall of 1922, and, sometime during the winter, the contractor confided to the school district board that he was out of funds and that he required financial assistance in order to further prosecute the work. As a result of much consideration and many conferences between the contractor and the school board, arrangements were made by which the school board advanced money to be used by the contractor in the prosecution of the work. The school board agreed to and did deposit money in the bank to the credit of the contractor, against which deposit the contractor drew checks in payment for labor and materials actually entering into the construction of the building. This method of payment commenced March 26, 1923, and from that time until May 5th checks were drawn against these deposits solely upon the signature of the contractor. Thereafter all checks drawn upon this deposit were countersigned by the clerk of the school district, who verified the fact that the checks so drawn were for materials and labor entering into the construction of the building. The work proceeded during the summer of 1923 in dilatory fashion, calling forth a number of letters from the school board to the contractor threatening that unless the work proceeded more expeditiously the school board would take charge of the work and complete the building. In the first part of October, 1923, the contractor abandoned the construction of the building and refused to perform, and the school district was compelled to and did complete the building, furnishing the material and labor necessary therefor. In so doing it expended a sum in excess of the contract price. It also transpired that there were unpaid claims for material entering into the construction of the building to the amount of $13,832.89.

This action was commenced by the plaintiff, who was surety on the contractor's bond, in the circuit court for Milwaukee county. The action is one in equity. The school

district and all unpaid materialmen are made defendants. The surety recognized its liability to the materialmen, but claimed that the conduct of the school district in various particulars, to be mentioned in the opinion, released it from liability, and prayed for judgment against the school district in whatever amount judgment might be rendered against it in favor of the materialmen. The school district counter-claimed against the surety company for moneys expended in excess of the contract price in the completion of the build-ing, for liquidated damages provided by the contract for the failure to complete the building, and for one or two other items of special damage.

The circuit court rendered judgment against the surety company in favor of various materialmen in the sum above mentioned, and also rendered judgment against the surety company in favor of the school district in the sum of $6,923.30, to which was added interest and costs, making the total sum $7,505.12. From the judgment so entered the plaintiff surety company brings this appeal.

For the appellant there were briefs by *Walter F. Mayer* and *James E. Coleman,* both of Milwaukee, and oral argu-ment by *Mr. Mayer.*

For the respondent there was a brief by *Edward M. Smart* of Milwaukee and *Chas. H. Wiegand* of Eagle River, attorneys, and *C. F. Mikkelson* of Milwaukee, of counsel, and oral argument by *Mr. Smart* and *Mr. Wiegand.*

The following opinion was filed November 17, 1925:

OWEN, J. The bond of the surety company was fur-nished pursuant to the provisions of sec. 3327*a,* Stats. That statute, therefore, entered into and became a part of the bond. *Baumann v. West Allis,* 187 Wis. 506, 204 N. W. 907. That statute has recently received the frequent con-sideration of this court and is discussed in *Webb v. Freng,* 181 Wis. 39, 194 N. W. 155; *Southern S. Co. v. Metro-*

*politan S. Comm.* 187 Wis. 206, 201 N. W. 980, 204 N. W. 476; *Southern S. Co. v. Hotchkiss,* 187 Wis. 227, 201 N. W. 986; *Building Contractors' L. M. L. Ins. Co. v. Southern S. Co.* 185 Wis. 83, 200 N. W. 770; and *Baumann v. West Allis, supra.*

The appellant claims, generally, that it was discharged from its obligation by reason of breaches of the contract on the part of the school district in paying out money contrary to the provisions of the contract. It claims that money was paid to the contractor in violation of the contract provision that payment should be made only once a month, and then only upon architects' certificates, and only to the extent of ninety per cent. of the material and labor entering into the construction of the building. It also claims that a complete new contract was made between the school district and the contractor in March, 1923, when the school district agreed to advance money in the manner set forth in the statement of facts to enable the contractor to prosecute the work of construction. If this general statement does not include all of the specific reasons assigned by the surety which it claims resulted in its discharge, a consideration thereof will apply to all other reasons assigned, and it is deemed unnecessary to set forth these reasons more in detail.

At the outset of our consideration of this case it is well to have in mind the general principles of law touching the liability of paid sureties upon bonds of this nature, at least so far as they can be invoked to work a discharge of the surety. It is thoroughly established by the decisions of this court that contracts of this kind, entered into for a consideration by surety companies engaged in such business, are in effect contracts of insurance, and the contracts are not to be construed according to the rules of law applicable to the ordinary accommodation surety. *First Nat. Bank v. U. S. F. & G. Co.* 150 Wis. 601, 137 N. W. 742; *Builders L. & S. Co. v. Chicago B. & S. Co.* 167

Wis. 167, 166 N. W. 320; *Building Contractors' L. M. L. Ins. Co. v. Southern S. Co.* 185 Wis. 83, 200 N. W. 770; *Joint School Dist. v. Bailey-Marsh Co.* 181 Wis. 202, 194 N. W. 171; *Maryland Cas. Co. v. Hjorth,* 187 Wis. 270, 202 N. W. 665. "While it is said in many cases that the rules of interpretation applicable to contracts of a gratuitous surety are not to be applied to a surety for compensation, it is meant that a different rule of law is applicable because the changed situation makes it applicable." *Joint School Dist. v. Bailey-Marsh Co.* 181 Wis. 202, 214, 194 N. W. 171. Sureties were favorites of the common law because their liabilities were gratuitously assumed. The rules and principles of the common law declaring the rights and liabilities of sureties were developed in an atmosphere surcharged with sympathy for the surety. Accordingly, it was held that any conduct prejudicial to the surety resulted in the total discharge of the surety from any liability. It was a consideration not usually enjoyed by other contractors. As stated in the *Bailey-Marsh Case,* we find numerous statements in court decisions that the principles applicable to gratuitous sureties do not apply to paid sureties. These declarations, however, come far short of declaring any rule by which the liabilities of paid sureties are to be determined. Paid sureties understand that they are not regarded as considerately or sympathetically as were the gratuitous sureties of the common law, but they are left in doubt as to the extent to which that consideration is withdrawn.

The number of cases coming to the courts in which paid sureties are urging their complete discharge by reason of some infraction of the contract on the part of the indemnified, suggests that a more specific rule concerning their rights and liabilities be stated. It is believed that rule will be easy to discover if such contracts be consistently treated (as they have often been declared to be) as insurance contracts rather than the common-law surety contract. It is

true that such contracts retain the form of surety contracts. But the principles governing the liability of sureties did not spring from the form of the contract but rather from the relations of the parties to such contracts, and a striking change in that relation exists where the obligation of the surety, once gratuitously assumed, is now assumed as a source of profit. While the contract between the parties should govern their rights and liabilities, such contract should no longer be construed strictly in favor of the surety. This has often been declared. It would seem, too, that not every circumstance prejudicial to the interests of the surety should work a total discharge of the surety without any reference or consideration to the extent to which the interests of the surety were in fact prejudiced by such circumstance. In other words, a paid surety should not suffer damage by breach of any duty or obligation resting upon the indemnified, but neither should the surety be permitted to profit thereby. If the breach on the part of the indemnified results in damage to the surety, the surety should be compensated for such damage, but no further.

This principle was applied by this court in *Joint School District v. Bailey-Marsh Co.* 181 Wis. 202, 194 N. W. 171, where conduct which would undoubtedly discharge the surety under the principles of the common law was held to amount to a discharge only *pro tanto*. There can be no injustice in requiring a paid surety, when in the business for profit, to prove that alleged delinquencies or misconduct on the part of the indemnified resulted not only in damage to the surety, but the extent of such damage. That is nothing more nor less than a rule applied with reference to contracts generally, except perhaps cases where the breach of a contract is so material as to justify the other party in rescinding the contract. We must not be understood as saying that there can be no conduct on the part of the indemnified which will result in the absolute discharge of

the paid surety, but we say that, as a general proposition, considerations of justice are fully met when the surety is recouped to the extent of the losses actually sustained by reason of misconduct on the part of the indemnified.

The statement of this principle forecasts the conclusion which must be reached in this case. The school district entered into a contract by which it became entitled to a school building under certain plans and specifications upon payment of a specified sum of money. The surety company, for a paid consideration, guaranteed to the school district that by the expenditure of this sum of money it would acquire such a school building. Although payments were made without architects' certificates, and although payments were made in excess of ninety per cent. of the construction, yet if it appears that every cent expended by the school district actually entered into the construction of the building, how can it be said that the surety has been injured? If mismanagement or inefficiency on the part of the contractor added to the cost of construction, certainly the school district is not responsible for that. That the school building cost considerably in excess of the contract price is admitted. That might have been due to an improvident bid on the part of the contractor in the first place, but the surety company saw fit to guarantee that the building would be erected for the contract price. It is apparent that the work of construction proceeded in a dilatory and most unbusinesslike manner. That this contributed to increase the cost of the building cannot be doubted. With such increased cost, however, the school district cannot be charged.

The lower court found that the school district acted in good faith in making the payments and in advancing money with which to carry on the work in the manner it did. It is apparent that the contractor would have been obliged to throw up his job long before he did had he not received this financial assistance. A departure from the terms of the

528     SUPREME COURT OF WISCONSIN.     [Jan.

Maryland C. Co. v. Eagle River U. F. H. S. Dist. 188 Wis. 520.

contract in these various respects kept the contractor on the job. The surety company complains because it was not notified of the financial embarrassment of the contractor, but there was no duty resting upon the indemnified to notify the surety as a matter of law, and there was no provision in the contract or in the bond requiring the school district to give the surety notice of the situation. The school district and the contractor in good faith sought to work out the situation and to make it possible for the contractor to complete the work. This might or might not have resulted to the benefit of the surety, but it by no means appears in this case that the surety suffered any damage by reason of this conduct, and by failing to show that it was damaged it has failed to prove a cause of action or that it was released from the obligations which it had voluntarily assumed.

We arrive at this conclusion without finding it necessary to refer to or construe that provision of sec. 3327a which provides that "No assignment, modification or change of the contract, or change in the work covered thereby, nor any extension of time for completion of the contract, shall release the sureties on said bond." It is contended by appellant that this provision is one for the benefit of laborers and materialmen and that it is not for the benefit of the municipality. In view of what we have already said it is not necessary for us to pass upon that question at this time.

The appellant also complains because the school district did not prove the reasonable value of the work done and materials furnished in completing the building after it had been abandoned by the contractor. The evidence offered by the school district in this behalf showed the amount of money actually expended by the district in the completion of the school building. There was no evidence offered on the part of the surety to indicate that the amounts expended either for material or labor were exorbitant. The complaint is that the school district simply failed in its proof by not

establishing reasonable value. It has been held that the amount paid is some evidence of reasonable value and proper cost. *Dewhirst v. Leopold,* 194 Cal. 424, 229 Pac. 30; *Pickles v. Ansonia,* 76 Conn. 278, 56 Atl. 552. We think in a case like this, where an owner is called upon to complete the construction of a building, that proof of the amount expended by the owner in that behalf is sufficient proof of the reasonable value or the reasonable cost of such construction in the absence of any showing to the contrary. It should not be put to the burden of bringing expert witnesses on reasonable values of a hundred and one elements entering into such construction. It is to be presumed that the materials were bought in the open market and that laborers were paid going wages. If that be true, then the amount paid does actually represent the reasonable cost of the work. Should the surety company feel that there was improvidence on the part of the municipality in completing the work, the burden belongs upon it to so prove.

No other points are raised by the appellant which we deem worthy of treatment. We find no error in the record, and the judgment should be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on January 12, 1926.