AMERICAN STATE BANK, Plaintiff-Appellant,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Respondent.

No. 14425.

United States Court of Appeals Seventh Circuit.

April 28, 1964.

Rehearing Denied May 21, 1964.

Carl R. Becker, Becker, Kinnel, Doucette & Mattison, Milwaukee, Wis., for plaintiff-appellant.

Laurence E. Gooding, Jr., Maxwell H. Herriott, Milwaukee, Wis., for defendant-respondent.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This is a diversity action by plaintiff, American State Bank, a banking corporation organized and existing under the

laws of Wisconsin, to recover $17,805.16 under a performance bond issued by defendant, United States Fidelity & Guaranty Company, a corporation organized and existing under the laws of Maryland. Plaintiff claims to be subrogated to the rights of laborers and materialmen on the bond.

The district court entered judgment dismissing plaintiff's action on the merits and granting defendant the costs of the action. Plaintiff appealed.

On March 17, 1953, plaintiff loaned $22,000 to Universal Map & Survey Company, a Wisconsin corporation, and received as security certain accounts receivable of Universal, including that of Indiana Farm Bureau Co-operative Association, Inc. This loan was subsequently increased to $50,000.

On March 31, 1953, Universal entered into a contract with Buckeye Pipeline Company, Inc., an Ohio corporation, in which Universal agreed to construct a petroleum products pipeline within the State of New York. Universal agreed to furnish and pay for all labor, equipment and material, and to furnish a performance bond satisfactory to Buckeye for the full amount of the contract, $642,-260, executed by a responsible bonding company.

Universal obtained defendant as surety on the performance bond. The bond was executed in Wisconsin by Universal as principal and defendant as surety, and accepted by Buckeye in New York. The bond provided, in pertinent part, "  *  *  * if the Principal [Universal] shall fully indemnify and save harmless the owner [Buckeye] from any and all claims and liens by materialmen, mechanics or laborers  *  *  * then this obligation shall be null and void; otherwise to remain in full force and effect."

On or about July 17, 1953, the Farm Bureau paid $25,000 on its account by check to Universal. Out of this amount, Universal paid $17,805.16 to laborers and materialmen in connection with construction of the pipeline. Plaintiff did not consent to nor receive notice of these payments to laborers and materialmen.

The pipeline was completed in 1954. Universal was adjudicated a bankrupt, its assets were fully administered and the bankruptcy estate was closed. Plaintiff filed a claim in the bankruptcy proceedings but received no dividend thereon.

Plaintiff claims that the laborers and materialmen had rights under the performance bond and when they received $17,805.16 from Universal out of money which represented security to plaintiff, plaintiff became subrogated to these rights.

The district court, in construing the bond, applied New York law and held that laborers and materialmen had no rights thereunder against defendant. The court did not reach the issue of whether, assuming laborers and materialmen had rights under the bond, plaintiff was subrogated to these rights.

On appeal, plaintiff contends that the district court should have applied Wisconsin law in construing the bond and that, under Wisconsin law, laborers and materialmen have rights on the bond.

Both parties agree that in diversity of citizenship cases, the federal courts, when deciding conflict of laws questions, must follow the conflict of laws rules prevailing in the states in which they sit. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). While agreeing that Wisconsin conflict of laws rules are applicable, the parties disagree as to which rules apply to the present case.

The district court held that the applicable Wisconsin rule was set out in Pat J. Murphy, Inc. v. Drummond Dolomite, Inc., E. D. Wis., 214 F.Supp. 496, 498 (1963) as follows:

"The Wisconsin rule of conflict of laws with respect to contracts has recently been stated in Estate of Knippel, 7 Wis.2d 335, at pages 341–342, 96 N.W.2d 514, at page 517 (1959), as follows:

"'  *  *  * With respect to various other types of contract, (other than antenuptial agreements)

this court has held that the choice of law governing validity and interpretation is basically a question of the intention of the parties except where their intention is to commit a fraud on the law. In the absence of evidence to the contrary, the law of the place of making the contract is presumed to be intended unless the place of performance be different. In the latter instance there is a rebuttable presumption that the law of the place of performance controls. (Citations omitted.) * * * ' "

The district court held and found that, "The contract with which we are here concerned, the performance bond, although executed in Wisconsin, was to be performed in New York where the work contracted for by Buckeye was to be done by Universal. Nothing in the facts here presented rebuts the presumption that New York law is controlling or gives rise to even an inference that the parties intended that the rights under the bond of laborers and materialmen performing work and furnishing material in New York be governed by Wisconsin law."

Plaintiff, while agreeing with the above quoted statement of Wisconsin law, contends that it is inapplicable because the issue in this case is not one of substantive contract rights but is concerned with procedural and evidentiary rules. Further, that the Wisconsin conflict of laws rule applicable to insurance contracts is different from the general contract rule.

Plaintiff urges that the issue in this case is whether the parties to the performance bond intended to benefit laborers and materialmen and the sufficiency of the proof of such intention must be weighed by the rules of the forum.

▆ While agreeing with plaintiff that the general rule is that matters of procedure, rules of evidence and rules of practice are governed by the law of the forum, Nelson v. American Employers' Ins. Co., 258 Wis. 252, 255, 45 N.W.2d 681, 682, 22 A.L.R.2d 1244 (1951); 11 Am.Jur. Conflict of Laws § 186 (1937),

we cannot agree that the issue in this case is to be determined by the laws of procedure or evidence. The issue here is one of construction and interpretation of the performance bond, compare Builders' Lumber & Supply Co. v. Chicago Bonding & Surety Co., 167 Wis. 167, 166 N.W. 320 (1918) with Fosmire v. National Surety Co., 229 N.Y. 44, 127 N.E. 472 (1920), and such issues are not determined by the law of the forum in conflict of laws cases. Estate of Knippel, 7 Wis.2d 335 at 341, 342, 96 N.W.2d 514 at 517 (1959); 15 C.J.S. Conflict of Laws 21, subd. b (1939).

Plaintiff argues that the general Wisconsin conflict of laws rule for contracts is inapplicable to insurance contracts written in Wisconsin; that under Wisconsin law a contractor's bond executed by a commercial surety for a premium is a contract of insurance; and that the Wisconsin conflict of laws rule as to insurance contracts is applicable to surety contracts.

▆ The "almost universal rule" is that contracts of insurance are governed by the law of the state where such contract is finally consummated. 29 Am.Jur. Insurance § 31 (1960). While Wisconsin courts have usually followed this rule, Heinen v. Home Mut. Casualty Co., 5 Wis.2d 282, 287, 92 N.W.2d 836, 838 (1958); Ritterbusch v. Sexmith, 256 Wis. 507, 515, 41 N.W.2d 611, 614, 16 A.L.R.2d 873 (1950); Archer Ballroom Co. v. Great Lakes Cas. Co., 236 Wis. 525, 528, 295 N.W. 702, 703–704 (1941); Kuroske v. Aetna Life Ins. Co., 234 Wis. 394, 397, 291 N.W. 384, 385, 127 A.L.R. 1505 (1940); Fishbeck v. New York Life Ins. Co., 179 Wis. 369, 373, 192 N.W. 170, 172 (1923), they have also applied the place of performance rule. Schultz v. Hastings, 5 Wis.2d 265, 270, 92 N.W.2d 846, 848–849 (1958). For purposes of this appeal, we shall assume that the Wisconsin conflict of laws rule as to insurance contracts applies the law of the place of consummation of the contract.

Plaintiff cites Wisconsin cases holding that contracts entered into for a con-

sideration by sureties are, in effect, contracts of insurance. Knuth v. Fidelity & Casualty Co., 275 Wis. 603, 607, 83 N.W.2d 126, 129 (1957); Citizens State Bank v. Southern Surety Co., 198 Wis. 416, 438, 224 N.W. 720, 729 (1929); Maryland Casualty Co. v. Eagle River U. F. H. S. Dist., 188 Wis. 520, 524, 205 N.W. 926, 928 (1926).

While agreeing with the above two premises of plaintiff's argument, we do not agree with plaintiff's conclusion that the conflict rule applicable to insurance contracts is applicable to surety contracts. The policy giving rise to the rule which treats surety contracts as insurance contracts is wholly unrelated to the policy underlying the conflict rule for insurance contracts.

The policy as to surety contracts is the result of the changing role of sureties. At common law, sureties generally assumed their obligations gratuitously and for this reason courts adopted a policy of construing such contracts strictly in favor of sureties. With the advent of paid sureties the policy changed. As stated in one Wisconsin case, "The number of cases coming to the courts, in which paid sureties are urging their complete discharge by reason of some infraction of the contract on the part of the indemnified, suggests that a more specific rule concerning their rights and liabilities be stated. It is believed that rule will be easy to discover, if such contracts be consistently treated (as they have often been declared to be) as insurance contracts rather than the common-law surety contract." Maryland Casualty Co. v. Eagle River U. F. H. S. Dist., 188 Wis. 520, 525, 205 N.W. 926, 928 (1926).

The policy for the conflicts rule as to insurance contracts, which in many states is an exception to the rule applicable to contracts generally, is said to be the desire of the states to protect their residents against out of state insurance companies. "The law * * * [of the state of] the place of making will frequently be more favorable to the insured than would the law of the place of incorporation of the insurance carrier. There-

fore, in most instances, the adoption by courts of the rule of the place of making supports whatever policy there may be in that state in favor of its own residents, a policy established either by judicial decision or by statutory enactment." Carnahan, Conflict of Laws and Life Insurance Contracts § 14, p. 37 (1942).

■■ In view of these policies, it appears that the rule which treats surety contracts as insurance contracts is limited to the interpretation and construction of such contracts as a matter of state substantive law. It has no application to the choice of the conflict of laws rule pertaining to the construction of surety contracts. It further appears that the conflict of laws rule pertaining to insurance contracts is inapplicable to surety contracts since no state policy of protection exists as to the latter.

The Restatement of Conflict of Laws, Second, recognizes a distinction between insurance contracts and surety contracts based upon this policy of protection. This has been summarized as follows: " * * * The domicile of the insured at the time of the issuance of a life insurance policy is said to be the most important contact in determining the State whose law governs the validity of the life insurance contract. This is because the State of the insured's domicile has the greatest interest in him. * * * Contracts of suretyship are said generally to be governed by the law which governs the obligation which the contract of suretyship was intended to insure. * * * " Reese, Contracts and the Restatement of Conflict of Laws, Second, 9 Int. & Comp. L. Q. 531, 538 (1960).

■■ We hold that under Wisconsin law, surety contracts are governed by the general Wisconsin conflict of laws rule for contracts and not the special rule for insurance contracts. In the instant case, the applicable substantive law is that of New York, the place of performance.

Plaintiff contends, in the alternative, assuming the law to be applied is that of the place of performance, Wisconsin is the place of performance. We disagree.

We hold, as did the district court, that the performance bond was to be performed in New York where the work which the bond insured was to be done. This is in accord with the Restatement of Conflict of Laws, Second, supra.

Finally, plaintiff asserts there is no conflict between the laws of Wisconsin and New York on this issue and thus the law of Wisconsin must be applied. We hold otherwise. Compare A. Kieckhefer Elevator Co. v. Massachusetts Bonding & Insurance Co., 214 Wis. 133, 252 N.W. 591 (1934) and Builders' Lumber & Supply Co. v. Chicago Bonding & Surety Co., 167 Wis. 167, 166 N.W. 320 (1918) with Liberty Mutual Ins. Co. v. William Casey & Sons, Inc., Sup., 216 N.Y.S.2d 773 (1961) and William S. Van Clief & Sons v. City of New York, 141 Misc. 216, 252 N.Y.S. 402 (1931).

We have carefully considered all contentions of plaintiff and find that the district court reached the correct result.

The judgment appealed from is affirmed.

Affirmed.