WIEGEL, Plaintiff-Respondent, v. SENTRY INDEMNITY COMPANY, Defendant-Appellant: ZEITZ, and another, Third-Party Defendants.

Supreme Court

*No. 77-243. Submitted on briefs January 9, 1980.—*
*Decided February 7, 1980.*
(Also reported in 287 N.W.2d 796.)

174

For the appellant the cause was submitted on the briefs of *Winston Binstock* and *Schnitzler Law Offices* of Madison.

For the respondent the cause was submitted on the brief of *Gilbert F. Barnard* of Darlington.

COFFEY, J.   This is an appeal of a judgment entered in the circuit court for Lafayette county granting the plaintiff-respondent's motion for summary judgment.

Joseph G. Wiegel, engaged in the business of farming, the plaintiff-respondent (plaintiff), brought the present

action against the defendant-appellant, Sentry Indemnity Company (Sentry), a Wisconsin corporation, to recover $44,000 allegedly due Wiegel under a surety bond contract.

In a prior action,[1] Charolais Breeding Ranches, Inc., (Charolais) had sued the plaintiff for return of approximately 250 head of cattle under a cattle-care agistment[2] contract and at the same time obtained an order to show cause seeking immediate return of the cattle. At the hearing on the order to show cause, made returnable within 96 hours, the trial court ordered the cattle returned to Charolais, but recognized that the limited time allowed for the plaintiff to answer probably interfered with his ability to properly prepare his legal defenses and possible counterclaims. The court thus required that Charolais obtain a surety bond to protect the plaintiff's lien rights to the cattle in the event that he filed and was successful in any counterclaims against Charolais. As a result of the court order, Charolais obtained a surety bond from Sentry Indemnity Company, the defendant-appellant.[3]

---

[1] Charolais Breeding Ranches, Ltd. v. Joseph Wiegel, Lafayette Circuit Court Case No. 425.

[2] An agistment contract is for the taking and feeding of another's cattle on one's own land at a certain rate of compensation. Black's *Law Dictionary* 88 (4th ed. rev. 1968).

[3] The pertinent language of the surety bond is as follows:

"The condition of the above obligation is such that,

"WHEREAS the above Principal has commenced a suit in the Circuit Court for Lafayette County, Wisconsin, against Joseph G. Wiegel, for the recovery of cattle of which said Principal is the owner, and

"WHEREAS at a hearing held pursuant to an Order to Show Cause the said Joseph G. Wiegel advised the Court that he intends to file an answer and counterclaim in the pending lawsuit, and

"WHEREAS the Principal having asked delivery of said cattle to it pending a final determination of all matters in said lawsuit, and

"WHEREAS the Court, the Honorable Richard W. Orton presiding, having ordered, on the record, that the cattle be returned to

The plaintiff filed a counterclaim against Charolais for damages[4] incurred as a result of the cattle-care contract and obtained a judgment in the amount of $45,007. Charolais failed to satisfy the judgment and thus the plaintiff brought the present action against the surety, Sentry, for recovery of the $44,000 guaranteed in the surety bond.

Sentry's answer asserted a general denial and claimed that the plaintiff, Wiegel, failed to prove any damages or that he had attempted to collect the judgment from the principal, Charolais, as a condition precedent to bringing a cause of action on the surety bond. Thereafter, Sentry amended its answer and added the following affirmative defenses:

1. That the plaintiff's right to bring an action against the defendant-surety, Sentry, requires as a condition precedent in the contract that there must be a final determination of all matters in the principal action of *Charolais v. Wiegel.* However, at that time there was a motion pending to set aside the judgment previously entered in the principal action and to grant a new trial on the merits.

2. That Charolais had received a discharge in bankruptcy prior to the entry of the plaintiff's judgment against Sentry which released Charolais from all dischargable debts, including the plaintiff's (Wiegel) debt. The discharge provided as follows:

---

Principal provided it post a surety bond in the amount of Forty-four Thousand and no/100 ($44,000.00) Dollars,

"NOW, THEREFORE, if said Principal shall be found liable to pay to Joseph G. Wiegel in his counterclaim any moneys, the Surety herein guarantees it will pay any and all such costs and damages as said Joseph G. Wiegel may sustain, not to exceed, however, the amount of this bond of $44,000.00; then this obligation shall be void; otherwise to remain in full force and effect."

[4] The record does not establish the specific nature of or reasons for the counterclaim.

"1. . . .

"2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the bankrupt . . .

"3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the above-named bankrupt."

Following Sentry's original answer and prior to the filing of the amended answer, the plaintiff brought a motion for summary judgment on the grounds that there was no genuine issue as to a material fact and thus the plaintiff, Wiegel, was entitled to judgment as a matter of law. After the trial, the court declined to rule on the motion, but held it open on a day-to-day basis pending determination of the motion to reopen the judgment in the action between the plaintiff and Charolais.

Before the court had ruled on the motion for summary judgment, Sentry moved, pursuant to sec. 802.09, Stats., for leave to file a second amended answer asserting as an additional affirmative defense that the plaintiff had knowledge that involuntary bankruptcy proceedings had been instituted against Charolais but failed to give notice to Sentry for some 6 months thereafter, and thus this failure was prejudicial to its defense. The trial court denied Sentry's motion to file a second amended answer on the following grounds:

". . . that one amended answer has heretofore been filed by the defendant and that seven months have elapsed since the filing of said amended answer; and that the facts and alleged affirmative defense proposed to be raised by the defendant in the new amended answer for which it seeks leave of the court to file have been readily available to the defendant since the inception of the action and prior to the time of filing its original answer

and subsequent amendment thereto; and that there has been unreasonable delay on the part of the defendant in its seeking again to amend its answer and raise an affirmative defense. . . ."

After holding the plaintiff's motion for summary judgment open for a 16 month period of time, the court entered judgment for the plaintiff in the amount of $44,000 plus costs. It is from this judgment Sentry appeals.

*Issues*

1. Does a discharge of the principal debtor in a bankruptcy proceeding relieve a surety from liability where the surety has furnished a bond to release chattels pursuant to a contract pending a subsequent judicial determination of the rights to such chattels?

2. Did the trial court err in refusing to allow Sentry, the surety, to file a second amended answer more than 8 months after they were allowed to file a first amended answer?

*Liability of the Surety*

On appeal Sentry contends that the discharge in bankruptcy of the principal debtor, Charolais, operates as a release of the surety from its contractual obligations to the plaintiff.

At common law sureties were considered favorites of the law:

"It is also true, . . . that sureties, especially gratuitous sureties, are favorites of the law and have a right to stand upon the strict terms of their obligation when ascertained. [citation omitted]" *Webb v. Freng*, 181 Wis. 39, 44, 194 N.W. 155 (1923).

In *Maryland Casualty Co. v. Eagle River Union Free High School Dist.*, 188 Wis. 520, 205 N.W. 926 (1926) this court held that:

". . . Sureties were favorites of the common law because their liabilities were gratuitously assumed. The rules and principles of the common law declaring the rights and liabilities of sureties were developed in an atmosphere surcharged with sympathy for the surety. Accordingly, it was held that any conduct prejudicial to the surety resulted in the total discharge of the surety from any liability. It was a consideration not usually enjoyed by other contractors. As stated in the *Bailey-Marsh Case,* we find numerous statements in court decisions that the principles applicable to gratuitous sureties do not apply to paid sureties. . . ." *Id.* at 525.

Under common law, any conduct prejudicial to a *gratuitous surety* resulted in the total discharge of the surety from liability. *Id.* However, the common law theory that sureties are favorites of the law is not applicable in this case because the surety's obligation was contractually assumed in exchange for consideration, therefore not a gratuitous surety.

Quoting *Maryland Casualty Co. v. Eagle River Union Free High School District, supra,* this court held that the contracts of *paid sureties* are to be treated as insurance contracts, and thus construed differently than accommodation sureties:[5]

". . . It is thoroughly established by the decisions of this court that contracts of this kind, [paid sureties] entered into for a consideration by surety companies engaged in such business, are in effect contracts of insurance, and the contracts are not to be construed according to the rules of law applicable to the ordinary accommodation surety. [citations omitted]." *Id.* at 524.

---

[5] Accommodation surety refers to an arrangement made as a favor to another and not based upon consideration, i.e., a surety obligation or relationship which is entered gratuitously. *See:* Black's *Law Dictionary* 32 (4th ed. rev. 1968) and *Maryland Casualty Co. v. Eagle River Union Free High School District, supra* at 524–25.

Moreover, the contracts of a paid surety are not to be construed strictly in favor of the surety:

". . . While the contract between the parties should govern their rights and liabilities, such contract should no longer be construed strictly in favor of the surety." *Id.* at 526.

Thus, in the case of a paid surety, contrary to the ruling case law for gratuitous sureties, "not every circumstance prejudicial to the interests of the surety should work a total discharge of the surety without any reference or consideration to the extent to which the interests of the surety were in fact prejudiced." *Id.* at 526.

Sentry, as surety, contends that the discharge of the debtor, Charolais, in bankruptcy also acts as a release from liability for the surety. However, case law generally recites that a discharge in bankruptcy constitutes a defense that is personal and only available to the debtor and his obligations. In *Winter v. Trepte,* 234 Wis. 193, 290 N.W. 599 (1940) this court held that a discharge in bankruptcy:

". . . does not constitute a release by the creditor. The debt itself is not extinguished. The discharge of the bankrupt forms a personal defense to him against further limitation on the debts declared upon in the bankruptcy proceeding. Being but a personal defense, it is not available to anyone else. Starting with the admitted fact that in bankruptcy the guarantor or surety is not discharged by the release of the bankrupt, it follows that in the absence of payment no release of the guarantors can be claimed. This is because the creditor does as he is required to do under the provisions of the law. Whatever results were produced by the reorganization proceedings were accomplished by operation of law and not by the voluntary act of the creditor. Upon payment, the guarantor is subrogated to the rights of the creditor whom he pays. [citations omitted].

"We have not searched for the source of the rule as expressed in section 16 of the Bankruptcy Act any further back than the case of *Brown v. Carr*, 2 Russell Rep. 600 (chancery of England), where it was held that a creditor, pending an action on a guaranty, against a surety who contests, proves the debt under a commission of bankrupt against the principal debtor, and, by his signature, enables the bankrupt to obtain his certificate, though the surety had given the creditor notice not to sign it, the surety is not thereby discharged from his liability on the guaranty.

"The generally accepted doctrine as found in the cases and among text writers is that the discharge of a debtor in bankruptcy, while it deprives the surety of all recourse against the principal for his indemnity, will not release the surety. 4 Stearns, Law of Suretyship, p. 145, §100, and cases cited. But the surety may be subrogated to the rights of the creditor to whom he makes payment." *Id.* at 198–99.

Therefore, in view of the fact that a discharge in a bankruptcy proceeding is a defense available only to the debtor, we hold that Sentry Indemnity Company's obligations, as a surety, to the plaintiff were not affected by the personal discharge of the principal, Charolais.

Alternatively, Sentry contends that it should be released from liability as its defenses or rights were prejudiced as a result of the failure on the part of the plaintiff, Wiegel, to notify them of the bankruptcy proceedings of the principal, Charolais. However, in *Maryland Casualty Co. v. Eagle River Union Free High School District, supra*, this court held there was no duty requiring the indemnified (the plaintiff, Wiegel, in this case) to notify the surety about the bankruptcy of the principal (Charolais) :

"The surety company complains because it was not notified of the financial embarrassment of the contractor, but there was no duty resting upon the indemnified to notify the surety as a matter of law, and there was no

provision in the contract or in the bond requiring the school district to give the surety notice of the situation." *Id.* at 528.

We hold, therefore, that since the plaintiff, (Wiegel) owed no duty to inform the surety (Sentry) of the bankruptcy of the principal (Charolais), the alleged failure of the plaintiff to provide notice raises no meritorious legal defense relieving Sentry from its liability or obligation under the terms of the contract.

Sentry, in its brief, cites *Electric Storage Battery Co. v. Black*, 27 Wis.2d 366, 134 N.W.2d 481 (1965), as authority for the proposition that the creditor, Wiegel, owes a duty to give notice to Sentry Indemnity Company, the surety, of Charolais' bankruptcy. As a general rule: ". . . one who has given an unlimited or open-ended guaranty is entitled to a notice of default within a reasonable time after the default occurs. [citations omitted]." *Id.* at 375. In the *Electric Storage Battery Co.* case the surety provided an unlimited and open-ended guaranty[6] and thus the court held that the surety was entitled to notice of the principal's default. However, that case is distinguishable from the present situation where the surety bond provided only a limited and fixed guaranty of $44,000. It has been frequently held that it is not a requirement that an indemnified (such as Wiegel) give notice of default where the time within which a guaranty operates is fixed and if the total amount of the obligation is known. *Id.* at 375. We also point out that the *Electric Storage Battery Co.* case can also be distinguished from this case as it involved a gratuitous surety (no consideration was given for the promise by the surety) while the present case involves a surety re-

---

[6] The surety promised as follows: "In regard to credit rating for Gerald Black. I will guarantee payment of material purchases."

lationship created by contract in exchange for consideration. Therefore, we hold the language in the *Electric Storage Battery Co.* case, requiring the party indemnified to give the surety notice of the principal's discharge in bankruptcy, is not applicable to this case.

## Amendment of Pleadings

Sentry has also contended that the trial court abused its discretion in denying Sentry an opportunity to file a second amended answer raising the additional affirmative defense of lack of notice of the debtor's discharge in bankruptcy. In this case Sentry sought leave to file a second amended answer some 8 months after its initial amended answer was filed. In its proposed second amended answer, Sentry asserted that they did not obtain knowledge of Charolais' discharge in bankruptcy until January 14, 1976 while the plaintiff was aware of Charolais' financial condition as early as August of 1974. Nevertheless, even though Sentry did not receive notice from the plaintiff, Sentry had knowledge of the principal's bankruptcy in mid-January of 1976, before commencement of the present action. Sentry gave no valid explanation to the court as to why it did not raise the lack of notice of the principal's discharge in bankruptcy defense in either of its first two answers. The fact that Sentry waited until December, 1976 before seeking to raise the defense when the information was available to it since January, 1976 was found by the trial court to be unreasonable and thus the court denied Sentry's motion for leave to file an amended answer:

". . . it appearing that one amended answer has heretofore been filed by the defendant and that seven months have elapsed since the filing of said amended answer; and that the facts and alleged affirmative defense proposed to be raised by the defendant in the new amended answer for which it seeks leave of the Court to file

have been readily available to the defendant since the inception of the action and prior to the time of filing its original answer and subsequent amendment thereto; and that there has been unreasonable delay on the part of the defendant [Sentry] in its seeking again to amend its answer and raise an affirmative defense. . . ."

Amendments to pleadings are governed by sec. 802.09 (1), Stats.[7] As a matter of course, the statute allows a party one amendment of the pleadings provided it is done within the time limitations established in the statute. All subsequent amendments of the pleadings require the amending party to obtain written consent of the adverse party or leave of the court. However, the statute directs that "leave shall be freely given at any stage of the action when *justice* so requires." (Emphasis added.) Sec. 802.-09(1), Stats. The trial court has wide discretion regarding amendment of pleadings. In *Wipfli v. Martin*, 34 Wis.2d 169, 148 N.W.2d 674 (1967) this court stated that sec. 269.44 (a forerunner of the present 802.09), Stats., ". . . should be liberally construed to permit the amendment of the pleadings so as to present the entire controversy providing the amendment does not unfairly deprive the opposing party of timely opportunity to meet the issue created by the amendment." *Id.* at 174. Refusal to allow an amendment would be an abuse of discretion: (1) when justice requires an amendment of the

---

[7] "802.09 **Amended and supplemental pleadings.** (1) AMENDMENTS. A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires. A party shall plead in response to an amended pleading within 20 days after service of the amended pleading unless (a) the court otherwise orders or (b) no responsive pleading is required or permitted under s. 802.01(1)."

pleadings, or (2) "When it appears that an omission . . . is material, . . . and that such omission or failure is through mistake, inadvertence, surprise, or excusable neglect." *Id.* at 173–74, citing *Platt v. Schmidt,* 115 Wis. 394, 398, 91 N.W. 992 (1902).

We hold there was no abuse of discretion in this case because: (1) Sentry was unable to demonstrate to the satisfaction of the court that its failure to raise the proposed affirmative defense within a reasonable time stemmed from either mistake, inadvertence, surprise or excusable neglect; and (2) there is no showing that the plaintiff was required by law or contract to notify the surety, Sentry, of the bankruptcy of the principal and thus the amendment of the answer to incorporate that defense is not necessary in the interests of justice. On appeal the determination of the trial court on whether to allow an amendment to the pleadings will not be reversed unless there has been a clear or manifest abuse of discretion. *Stanhope v. Brown County,* 90 Wis.2d 823, 834, 280 N.W.2d 711 (1979); *Trispel v. Haefer,* 89 Wis.2d 725, 279 N.W.2d 242 (1979). Therefore, the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.