ESTATE OF KNIPPEL: KNIPPEL, Appellant, v. MARSHALL &
ILSLEY BANK, Executor, and others, Respondents.

*April 10—May 5, 1959.*

338

For the appellant there were briefs and oral argument by *Thomas E. Torphy* and *Bernard J. Luettgen,* both of Milwaukee.

For the respondents there was a brief and oral argument by *Alfred W. Ecks* of Milwaukee.

A brief was filed by *Everson, Ryan, Whitney & O'Melia* of Green Bay as *amicus curiae.*

FAIRCHILD, J. The questions presented are: (1) Whether the antenuptial agreement must be disregarded because it is in conflict with the law of Arizona; (2) whether the agreement is to be set aside because Mr. Knippel did not make a full and frank disclosure of his worth; (3) whether the evidence compels the county court to find that the execution of the agreement was obtained by fraud. We conclude that all the questions are to be answered in the negative and that the judgment of the county court is to be affirmed.

(1) *Validity of the agreement.* Sec. 25–201, 9 Arizona R. S. Anno., provides in part: "A. Parties intending to marry may enter into agreements not contrary to good morals or law. They shall not enter into an agreement or make a renunciation the object of which is to alter the law of descent of property either with respect to themselves or inheritance by their children or posterity which either may have by any other person or with respect to their common children.

"B. A matrimonial agreement must be acknowledged before an officer authorized to acknowledge deeds."

It is clear that antenuptial agreements are not wholly prohibited by the law of Arizona and that the Knippel agreement was executed in the manner prescribed by the Arizona statutes. While parties intending to marry are prohibited from including certain types of provisions, no penalty is provided for executing an agreement which contains them.

Presumably the effect of the prohibition is simply to make the prohibited agreement void.

The agreement was signed, the marriage ceremony performed, and the wife's domicile, before the marriage, was in Arizona. The husband's domicile, both before and after the marriage, was in Wisconsin. Very shortly after the marriage, in accordance with the intention of the parties, the wife came to Wisconsin with her husband and they made their home here. The only real estate involved was in Wisconsin.

It is conceded that the Knippel agreement does not conflict with the law of Wisconsin. *Amicus curiae* has suggested that neither is it invalid under the Arizona statute because in Arizona a husband is permitted by law to dispose of his separate property by will and his widow has no right to take any portion of his separate property given by will to others. We are not prepared to say whether under Arizona law an agreement which gives a wife a right to receive certain of her husband's separate property at his death would be considered to be an alteration of the law of descent. Neither are we prepared to say that an agreement which, as this one does, provides that the property acquired by each spouse after marriage will be separate property, is invalid under Arizona law. Under Arizona law the property acquired during marriage, except that which is acquired by gift, devise, or descent, or earned by the wife during separation, is community property. Sec. 25–211, 9 Arizona R. S. Anno. The survivor succeeds to one half the community property and the other spouse may not dispose of that half by will. Sec. 14–203, 9 Arizona R. S. Anno. In view of our conclusion that validity is to be determined by the law of Wisconsin, we express no opinion on the efficacy of the identical agreement if subject for some reason to the law of Arizona.

The question of which law is to be applied has not arisen in Wisconsin with respect to an antenuptial contract. With

respect to various other types of contract, this court has held that the choice of law governing validity and interpretation is basically a question of the intention of the parties except where their intention is to commit a fraud on the law. In the absence of evidence to the contrary, the law of the place of making the contract is presumed to be intended unless the place of performance be different. In the latter instance there is a rebuttable presumption that the law of the place of performance controls. *Brown v. Gates* (1904), 120 Wis. 349, 97 N. W. 221, 98 N. W. 205; *International Harvester Co. v. McAdam* (1910), 142 Wis. 114, 124 N. W. 1042. These presumptions do not answer the question presented in this case with complete certainty because the parties contemplated marriage in Arizona, as well as making their home in Wisconsin, and both were elements of performance of the agreement.

It is well established that regardless of the law of the place where a marriage is performed, the rights of the wife, in the absence of contract, with respect to her and her husband's personal property are governed by the law of the matrimonial domicile, and with respect to land, by the law of the situs. 11 Am. Jur., Conflict of Laws, pp. 373, 374, sec. 86. As there stated in part:

"Where the marriage takes place in the state in which the woman has been domiciled but with the intention of the parties, which is carried out within a reasonable time, of establishing their common home in another state in which the husband is domiciled, the marital rights of the parties in the personal property of each other owned at the time of the marriage is governed, as a general rule, by the law of the state of their contemplated and subsequently established matrimonial domicile; such state is to be deemed their initial matrimonial domicile. . . .

"In the absence of evidence of the intention of the parties as to the place where the matrimonial domicile is to be

established, it will be presumed that it is to be established where the husband is domiciled, even though that is a state different from the one in which the marriage is celebrated, for on marriage the wife at once loses her own domicile and assumes that of her husband."

In *Schultz v. Hastings* (1958), 5 Wis. (2d) 265, 92 N. W. (2d) 846, we had before us an insurance policy executed and delivered in Illinois to a Wisconsin corporation with its principal place of business in Wisconsin covering trucks operating in Wisconsin. We applied the law of Wisconsin because it was clear that performance was to be in Wisconsin, distinguishing an earlier case where the place of performance was in effect country-wide and where we had applied the law of the place where the policy was issued.

In *Auten v. Auten* (1954), 308 N. Y. 155, 161, 124 N. E. (2d) 99, 50 A. L. R. (2d) 246, the New York court of appeals decided that whether certain acts constituted a breach of contract must be determined by applying the law of the place which has the most significant contacts with the matter in dispute. In the opinion Judge FULD pointed out that this standard, also referred to as the "grouping of contacts" or "center of gravity" theory, has been adopted in a number of jurisdictions to replace rules dependent upon place of making, place of performance, and presumed intention of the parties.

"Although this 'grouping of contacts' theory may, perhaps, afford less certainty and predictability than the rigid general rules . . . the merit of its approach is that it gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation.' . . . Moreover, by stressing the significant contacts, it enables the court, not only to reflect the relative interests of the several

jurisdictions involved . . . , but also to give effect to the probable intention of the parties and consideration to 'whether one rule or the other produces the best practical result.' "

We do not hesitate to declare that in the case before us Wisconsin is the state having the most significant contacts with the matter in dispute.

There appears to be a difference of opinion among courts as to whether the validity of antenuptial agreements is to be determined by the law of the place where they are made or the law of the initial matrimonial domicile. Lindey, Separation Agreements and Antenuptial Contracts (rev. ed.), p. 811, sec. 90. The two principal cases cited which state that the law of the place of making controls arose out of situations where the place of making and the domicile of the parties at the time of marriage were apparently the same. *New Jersey Title Guarantee & Trust Co. v. Parker* (1915), 85 N. J. Eq. 557, 96 Atl. 574; *Matter of Weeks* (1945), 294 N. Y. 516, 63 N. E. (2d) 85.

One author has drawn conclusions from a number of cases as follows: "Subject to the general remarks hereafter, the following is put forward as a guiding principle drawn from the decisions. The law governing in real and personal property, caught by a marital contract, is the law which the parties intend to so govern. This intention may be expressly declared in the contract, or it may appear as an inference drawn by the court from the terms of the contract and the surrounding circumstances, such as the country or countries where the spouses were domiciled at marriage, the *locus contractus,* or the *locus solutionis.*" Stone, The Law Governing Rights In Property Under a Prenuptial Contract, 13 Boston University Law Review, 219, 223.

We are satisfied that no rule compels us to apply the Arizona law in determining the validity of the Knippel agreement; and that either the rule based upon determining

the intention of the parties or the "grouping of contacts" theory would require the application of the law of Wisconsin.

(2) *Requirement of disclosure.* The county court found that Miss Boyle was not aware of Mr. Knippel's financial worth and he did not disclose it to her. Do these facts permit Mrs. Knippel to avoid the agreement? In *Estate of Koeffler* (1934), 215 Wis. 115, 254 N. W. 363, this court declined to approve a rule that avoids an antenuptial agreement between engaged persons unless the prospective husband shall fully and fairly disclose to his prospective wife the extent and value of his property. It adhered to the rule that the widow, asserting fraud, has the burden of proving it unless the provisions made for her are so manifestly inadequate as to give rise to a presumption of fraud.

The rule with respect to disclosure has been stated by the supreme court of Pennsylvania as follows: "Antenuptial agreements depend for their validity upon the presence of one of two factors, namely: A reasonable provision for the wife, or in the absence of such provision, a full and fair disclosure to the wife of the husband's worth. . . .

"Where the provision made for the wife is grossly disproportionate to the value of the husband's estate, fraudulent concealment will be presumed and the burden of proof thrown on him to show that full disclosure had been made." *Estate of McClellan* (1950), 365 Pa. 401, 405, 75 Atl. (2d) 595.

A number of cases dealing with this subject have been collected in an annotation at 27 A. L. R. (2d) 883. The annotator has concluded that there is a duty of disclosure, particularly where the parties have become engaged before the antenuptial agreement is executed and that a disproportionately small allowance raises a presumption that the intended wife was not fully informed as to the financial worth of the prospective husband.

Mr. Lindey has treated full disclosure and reasonable provision for the wife as alternative requirements, the agreement being valid if either has been met. Lindey, Separation Agreements and Antenuptial Contracts (rev. ed.), p. 794, sec. 90.

We do not find it necessary to reconsider the rules bearing upon the subject of disclosure of financial worth. They would not be applicable here. In the case before us the agreement provided the wife with an interest in one third of the husband's estate, whatever it might be. Thus the larger the estate, the larger the benefit she would obtain. Miss Boyle's ignorance of the amount of Mr. Knippel's wealth could have misled her into signing this agreement for an interest in a fraction of it only if she thought his estate was larger than it really was.

(3) *Fraud.* Mrs. Knippel did not allege any misrepresentation by Mr. Knippel. The court heard no testimony but hers. She testified to statements made by Mr. Knippel which would indicate that, by signing the agreement to accept the use of one third, she would secure some benefits for herself which his children might otherwise insist upon receiving. The effect of the agreement, of course, was to the contrary since the agreement gave her less than she could have insisted upon in the absence of the agreement. The object of the agreement from Mr. Knippel's point of view was undoubtedly to leave him free to deal more generously with his children and grandchildren than if he married her in the absence of the agreement. His family resulted from his first marriage during which he presumably had accumulated much of his estate and if he were not to marry a second time he would be free to leave his entire estate to his children or grandchildren.

Under the agreement Mrs. Knippel was entitled to the furniture, the use of the home during widowhood, an allowance of $250 per month during administration, and a trust

of one third of the estate. The will provided that she should receive the income from the trust and gave the trustee power to invade principal in order to provide necessities. The gross personal estate was $614,000. The record does not disclose any estimate of the net amount which will pass into the trust nor of the probable income. Nor are we informed whether Mr. Knippel's property was worth more or less when the agreement was signed. In any event we cannot say that the agreed provisions were so manifestly inadequate as to give rise to a presumption of fraud.

While misrepresentation of the effect of the agreement as giving her more than she would have been entitled to in its absence, considered in the light of the relationship between the parties and the asserted fact that the parties had never previously discussed an agreement, that she saw it for only twenty minutes before it was signed, and that she was not given a copy until years later, would have constituted fraud if she relied upon such misrepresentation, the county court was not compelled to make a finding of fraud. Mrs. Knippel was a highly interested witness; she had not alleged any such misrepresentation in the pleading filed in her behalf; and she had failed to take any action to set aside the agreement during Mr. Knippel's lifetime although she testified that she had seen a copy and expressed her dissatisfaction with it a number of years before he died.

*By the Court.*—Judgment affirmed.