ZELINGER, by Guardian *ad litem,* and others, Plaintiffs and Respondents, v. STATE SAND & GRAVEL COMPANY and another, Defendants and Appellants: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Impleaded Defendant and Respondent.

*January 4—February 27, 1968.*

100

101

For the appellants there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *Francis R. Croak* and *Robert A. Nuernberg* of counsel, all of Milwaukee, and oral argument by *Mr. Croak.*

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *James P. Reardon* of counsel, all of Milwaukee, and oral argument by *Mr. Reardon.*

HALLOWS, C. J. The plaintiffs Bernard and Helen Zelinger are husband and wife and the parents of the minor plaintiff Lucille Zelinger. Their complaints allege they are residents of Illinois and on August 4, 1964, Helen Zelinger was driving a car owned by her husband in which the minor Lucille was a passenger. Through the negligence of an employee of the defendant State Sand & Gravel Company, which is insured by the defendant Royal Indemnity Company, both Lucille and Mrs. Zelinger were injured. They seek to recover damages for their injuries. Bernard Zelinger does not allege he was a passenger or suffered any personal injuries but seeks to recover damages for his loss of aid, comfort and society of his daughter and wife and his expenses in providing medical services to his wife and daughter. The defendant State Sand & Gravel Company has not cross-complained for any property damages and their employee is not made a party to this action. The company does, however, seek contribution by way of a counterclaim against Helen Zelinger and through a third-party complaint from her insurer, the impleaded State Farm Mutual Automobile Insurance Company (State Farm).

State Farm and Helen Zelinger demurred to these pleadings on the ground that Illinois law was applicable and under that law interspousal immunity existed, S. H. A. ch. 68, sec. 1; *Heckendorn v. First Nat. Bank*

(1960), 19 Ill. 2d 190, 166 N. E. 2d 571, which was not pleaded in the defendants' counterclaim or third-party complaint. The trial court followed the methodology suggested in *Wilcox v. Wilcox* (1965), 26 Wis. 2d 617, 133 N. W. 2d 408, to determine the choice of law and concluded the Illinois contacts in respect to the contribution issue presented were of greater significance than those of Wisconsin. The trial court was, of course, without the benefit of *Heath v. Zellmer* (1967), 35 Wis. 2d 578, 151 N. W. 2d 664, which had not then been decided and in which this court adopted certain choice-influencing guides to be used in the solving of choice-of-law problems.

To put the problem of the particular issue now before us in perspective we must backtrack a bit. Originally and for many years tort actions were generally treated as a part of the law of remedies in the field of jurisprudence. Under this concept, the general rule became established that the *lex fori* governed remedies and was to be applied to torts even though the facts thereof spilled over several states and involved substantive as well as procedural issues. An example of this rule in Wisconsin is *Anderson v. Milwaukee & St. P. R. R.* (1875), 37 Wis. 321, where the Wisconsin substantive law of the forum was applied to deny recovery for an injury received in Iowa, which state allowed recovery against a railroad for the negligence of a fellow servant. Wisconsin did not recognize such a cause of action.

Subsequently, the vested rights theory and emphasis on predictability and certainty in conflicts became popular and the *lex loci delicti* became the controlling and determinative factor in tort actions. This view was followed and adopted in 1934 by the Restatement, Conflict of Laws, p. 457, sec. 378. But as early as 1904 in *Bain v. Northern Pacific R. R.* (1904), 120 Wis. 412, 98 N. W. 241, Wisconsin adopted the *lex loci delicti* rule, applied it to the recognition of a cause of action and overruled *Anderson v. Milwaukee & St. P. R. R., supra.*

This mechanical rule of thumb was applied in *Buckeye v. Buckeye* (1931), 203 Wis. 248, 234 N. W. 342, to a tort action with the result that the Illinois interspousal immunity was applied to Wisconsin residents. Under the vested rights view, the cause of action was considered to be created in the state of the tort and the capacity to sue or immunity or defense was considered part and parcel of those rights. Much unrest and criticism developed over the *Buckeye Case* and this area of the law of conflicts became more turbulent.

A revolt, in effect, commenced against the *lex loci delicti* rule much as a revolt later started against governmental and charitable immunities. In the area of interspousal immunity in conflict-of-law cases the revolt was led by *Haumschild v. Continental Casualty Co.* (1959), 7 Wis. 2d 130, 95 N. W. 2d 814, in which Buckeye and other Wisconsin cases were overruled. The mechanical application of the *lex loci delicti* rule was rejected in cases involving interspousal immunity issues, but in its place for such issues another universal mechanical rule was substituted which required the application of the law of the domicile. This transition was accomplished not on the ground of the significance of contacts in each case but by characterizing the interspousal immunity as a part of family law and not tort law. On the reasoning the law of the domicile was more important and should follow a person normally subject to it the law of the domicile was held to be unconditionally applicable.

*Haumschild* still was a mechanical application of a special rule as an exception to the *lex loci delicti* rule in the field of conflict of laws. The revolt against the *lex loci delicti* rule broadened and reached its climax in *Babcock v. Jackson* (1963), 12 N. Y. 2d 473, 191 N. E. 2d 279, which rejected the rule in all tort cases regardless of particular issues and substituted therefor the "interest analysis" approach to determine the choice of law for each particular issue involved in a tort. The most

recent jurisdiction to reject the *lex loci delicti* rule and to adopt the view that the forum "must consider all the foreign and domestic elements and interests involved" is *Reich v. Purcell* (1967), 63 Cal. Rptr. 31, 432 Pac. 2d 727.

In *Wilcox v. Wilcox* (1965), 26 Wis. 2d 617, 133 N. W. 2d 408, an exhaustive review of the criticism of the *lex loci delicti* rule was made and the rule was abandoned in its entirety as a mechanically determinative rule in conflict cases whether such cases involved torts or contracts or other subject matter. We then adopted the rule contemplated by Tentative Draft No. 9 of the Restatement 2d, *Conflict of Laws,* and by the *Babcock Case,* commonly referred to as the "center of gravity," "grouping of contacts," or "dominant interest" rule or the "interest oriented" or "interest analysis" approach. However, we did not accept the order of importance assigned to the various contacts or considerations in the Restatement draft. We stated "the weight depends on their relevancy to the policies of the place of the wrong and the forum" and we might add in the light of the instant facts —the domicile of the parties. *Wilcox v. Wilcox, supra,* at 634.

In the subsequent and recent case of *Heath v. Zellmer, supra,* we moved to the next problem since *Wilcox* only involved Wisconsin residents in a one-car accident in Nebraska and the issue whether the guest statute of Nebraska allowing recovery only for gross negligence or intoxication should apply to Wisconsin domiciliaries who were husband and wife. If we applied *Haumschild* as a mechanical rule, we would have applied the Wisconsin law of domicile. But we rejected *Haumschild* as a mechanical rule and held interspousal immunity was only one factor to be considered in the choice-of-law problem. In *Wilcox* we did not definitely master or expound the details of the "interest analysis approach" except to state that in the process we started with the law of the forum

as presumptively applying as a basic rule "unless it becomes clear that nonforum contacts are of the greater significance." *Wilcox v. Wilcox, supra,* at 634. This initial-approach idea was taken from Ehrenzweig, *Guest Statutes in the Conflict of Laws—Towards a Theory of Enterprise Liability Under "Foreseeable and Insurable Laws,"* 69 Yale L. Jr. (1960), 595. From this basic standpoint "consistent judicial practice" in the common law of conflicts was to provide exceptions, but the *lex fori* was given an "analytical primacy."

In *Heath* an exhaustive analysis of the choice-influencing factors was made and the court adopted the five guidelines of analysis suggested by Robert Leflar in his extensive and constructively critical article, *Choice-Influencing Considerations in Conflicts Law,* 41 N. Y. U. L. Rev. (1966), 267, 282. The guidelines are:

(a). Predictability of results;
(b). Maintenance of interstate and international order;
(c). Simplification of the judicial task;
(d). Advancement of the forum's governmental interests;
(e). Application of the better rule of law.

All these guides should be considered in each case regardless of its area in the law and their relative importance will vary according to the precise issue involved. Under this approach the *lex fori* is not a choice-influencing consideration as such but is a weak presumption to be used as a starting point in applying the conflict-of-law rule adopted in *Wilcox* but which is not a part of the five choice-influencing considerations adopted in *Heath.*[1] This analysis is somewhat analogous to the determination of the comparison of causal negligence under our doc-

---

[1] The author of this opinion would abandon this presumption as a starting point under the *Wilcox* rule as being unnecessary and would apply the standards of *Heath* from scratch.

trine of comparative negligence in that it is not the number of respects in which negligence may be found (quantitative) but the contribution (qualitative) of the negligence to the cause which determines the outcome.

In respect to the instant facts, there is no question that both Illinois and Wisconsin have contacts with the tortious occurrence. Unlike in *Wilcox,* we here are presented with a serious conflict because of the basic and significant repugnance of the underlying state interests involved. A conflict may be in form only with no competing public interest or the result may be the same because the law of both jurisdictions would produce the same result. These are false conflicts. See Traynor, *Is This Conflict Really Necessary?,* 37 Tex. L. Rev. (1959), 657. The fact that balancing of considerations results overwhelmingly in favor of the application of the law of one jurisdiction does not justify characterizing the case as one having a false conflict. An easy choice does not make a false conflict. Unless competing public interests can be harmonized on a rational basis in relation to the precise issue to be determined, a real conflict exists in the choice of law as to that issue. As pointed out in *Wilcox,* a tort is no longer considered unitary but may give rise to many issues to which the law of the forum may require the application of different foreign laws.

In using the interest-analysis approach to solve the issue presented, we come to a result contrary to that found by the trial court, although this is not to say that its opinion was unreasonable. In using this method of determining the choice of law, one must be conscious that reasonable men may very well differ in judgment.

Under the law existing before *Wilcox* and *Heath,* Wisconsin being the place of the wrong would apply its tort law to these three causes of action unless we followed *Haumschild* as was done in *Haynie v. Hanson* (1962), 16 Wis. 2d 299, 114 N. W. 2d 443, and apply Illinois law to the interspousal phase of the husband's suit. But then

in the minor's action we would be faced with the argument that parental immunity, which is recognized in Illinois (*Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N. E. 2d 525), is a part of the same family law as interspousal immunity. If we agreed, only the guest statute would be affected by the *lex loci delicti.* These issues are better examined and decided under our present rule of choice of law.

In applying the guidelines of *Heath,* we find the choice-influencing consideration of predictability is minimal in the case before us since parties do not plan to be negligent or to commit torts relying on interspousal or host-guest immunity. This aspect of the influence of this consideration was adequately covered in *Heath.* However, it is argued the premium on the plaintiffs' liability policy is based upon the Illinois immunity because such immunity directly affects the amount of losses, and premiums are based upon the amount of losses. If this is a relevant consideration under this heading, we must likewise take into consideration the premium paid by the defendant to its insurer, for the Wisconsin rates reflect lower losses because of the existence of the Wisconsin contribution doctrine. This consideration then is a standoff. The fact is, however, that this record and the pleadings do not disclose where the respective policies were issued. We can only surmise that the plaintiffs' policy was issued on applicable Illinois rates and the defendant's policy on applicable Wisconsin rates.

The plaintiffs' insurer argues the so-called "household exclusion clause" is a relevant consideration for applying Illinois law. The clause is valid in Illinois and operates to deny coverage for injuries to persons or property suffered by a member of the insured's immediate family residing in the same household, and this exclusion has been given effect in Wisconsin when valid in the state of policy issuance. *Miller v. Madison County Mut. Automobile Ins. Co.* (1964), 46 Ill. App. 2d 413, 197 N. E. 2d

153; *Perlick v. Country Mut. Casualty Co.* (1957), 274 Wis. 558, 80 N. W. 2d 921. The point of this argument is that Helen Zelinger has no insurance in respect to any liability she may have to her husband and her child. While insurance coverage may be a relevant consideration on a broad base, it is hardly one to be applied on an individual basis unless we are going to establish a separate rule for uninsureds, another for limited insureds, and still another for fully insureds. We would think that in our mobile society a liability policy with a household exclusion clause is false security because the coverage is too limited. However, we do not assign much relevancy to this factor. The private contract of one tort-feasor with his insurance company should not determine whether a third party should recover contribution. But we doubt if the consideration is properly before us in any event because the policy is not in the record and is outside the scope of the demurrers and we do not know as a fact what coverage the Zelinger policy afforded.

In respect to maintenance of interstate order, judicial decisions in automobile cases do not ordinarily interfere with the free flow of commerce between states and consequently no state is very much affected or annoyed at what the other state does. We have not yet reached the stage where conflict-of-law rules are based upon retaliation. Lay people will continue to drive across state borders without the slightest idea or knowledge of what their rights are or whether they are changed at the crossing. Here, each state has a sufficient interest to apply its own law as the occasion arises without being charged with penalizing interstate commerce or warranting any retaliation by another state.

The respondent argues that unless Illinois law is applied, forum shopping will be encouraged. Forum shopping, of course, is not present in the instant case because the plaintiffs would presumably under their arguments have been better off starting their actions in Illinois if

they could have obtained service on the defendants. However, in commencing their actions in Wisconsin the plaintiffs took advantage of suing the defendant insurance company direct as permitted by Wisconsin law. On these facts, forum shopping played no part and probably will not in many cases until the plaintiff can predict with certainty how a choice of law will be resolved.

The simplification or expediting the judicial task of trying the case is not of great relevance here. The Wisconsin courts are used to trying cases under the law of the forum. But, applying Illinois law involves no great hardship either since it is a denial of liability. The converse, of course, is not true because the application of Wisconsin law by an Illinois court unfamiliar with our comparative-negligence and contribution law which requires a special verdict, special instructions, and techniques, may well be more difficult than applying their familiar tort rules of contributory negligence and indemnification type of contribution with its distinction of active and passive negligence. However, even this observation may prove false in time if the Illinois Supreme Court affirms the adoption of the comparative-negligence rule in *Maki v. Frelk* (1967), 85 Ill. App. 2d 439, 229 N. E. 2d 284.

The most relevant factors, as in *Heath*, are the advancement of the forum state's interest and the better law considerations. As to the first, Illinois has a guest statute providing no guest shall have a cause of action except for wilful and wanton misconduct of the driver. Likewise, Illinois has a statute governing the rights of married women, providing, "Neither a husband nor a wife may sue the other for a tort to the person committed during coverture." In addition, suits between a child and parents are limited by judicial decisions to actions where the parents' tort constitute wilful and wanton misconduct. *Nudd v. Matsoukas, supra.* In these respects, all of which are of recent origin, Illinois must be credited with a bona

fide intention of doing what it considered to be best for its citizens.

Herein lies the real significance of conflict because Wisconsin public policy in this area is to the contrary. It has no guest statute and never did have. Its tort law considers the duty of the host to his guest to be the same as he owes to a nonguest. Neither does a guest impliedly assume the risk of riding with the host but may be contributorily negligent for his own safety, but such negligence does not defeat recovery unless it at least equals the negligence of the host. *McConville v. State Farm Mut. Automobile Ins. Co.* (1962), 15 Wis. 2d 374, 113 N. W. 2d 14. Wisconsin has no interspousal immunity doctrine in torts, and parental immunity for this type of tort was abolished recently in *Goller v. White* (1963), 20 Wis. 2d 402, 122 N. W. 2d 193. On the specific issue of contribution, Wisconsin allows contribution between joint tort-feasors where common liability exists within the limit of the comparative-negligence doctrine and apportions that liability on the basis of the relative fault of the parties. *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105. While there are limitations to recovery in contribution, the basic theory is to spread the risk to the extent of fault and recovery is possible to a far greater extent in Wisconsin than is permitted under the Illinois concept of indemnification with its passive negligence requirement. *Farmers Mut. Automobile Ins. Co. v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. 2d 512, 99 N. W. 2d 746; *Western Casualty & Surety Co. v. Milwaukee General Construction Co.* (1933), 213 Wis. 302, 251 N. W. 491; *Ellis v. Chicago & N. W. R. R.* (1918), 167 Wis. 392, 167 N. W. 1048.

One might well argue an interest of a government in its own rule declines as the rule becomes increasingly inappropriate to meet current needs of society. However, under this heading we need not determine which state's interest is dominant or controlling because it is only a

choice-influencing factor to be given weight and consideration. However, we cannot disregard or deprecate the host-guest rule, interspousal immunity or parental immunity on the grounds they are concerned only with a remedy or have no direct bearing on the regulation of traffic. That is too narrow a view of the scope of the considerations in choice of law. These doctrines and their opposites seek to serve policies of substance. The interspousal and parental immunities rest on the proposition that family peace is promoted thereby and perhaps as a by-product collusive suits are held to a minimum. The host-guest policy is basically the good Samaritan argument that one should not be liable for negligence in the performance of a good deed. On the other hand, Wisconsin's interest in the nonexistence of such rules is to promote the spreading of the risk and fasten liability in torts on a moral basis of fault. Such moral considerations leave little room for a justification of immunity for collateral reasons.

The better rule consideration somewhat overlaps the previous guideline; but while we must give weight to another state's interest as that state sees it, under this consideration the weight to be given such doctrine depends upon its merits as seen by the court making the choice of law. In *Heath,* we detailed our judgment of a host-guest statute characterizing such law as archaic and not justified in the law of torts in this modern day. Likewise, the interspousal immunity has little justification. It was based upon the common-law theory of unity of person and that person was the husband. The status of women in our society with rights as well as immunities and duties is now recognized and the wife as a legal person is equal to her husband. Likewise, this state sees no social need for the existence of the doctrine of parental immunity but rather its existence works an injustice to the child. In fact, a child needs more protection and rights from a socioeconomic view than his adult parent.

At least, children are now being thought of as having some personal rights. See *In re Gault* (1967), 387 U. S. 1, 87 Sup. Ct. 1428, 18 L. Ed. 2d 527; *Winburn v. State* (1966), 32 Wis. 2d 152, 145 N. W. 2d 178. In our view the existence of parental immunity in torts is not the better law.

There may be room for disagreement with this analysis or parts thereof, but the considerations of advancing this state's interest and what the court considers to be the better law dictate that these defendants are entitled to the benefits of the Wisconsin law of contribution and the subsidiary rules upon which it rests. This is the basic question. Interspousal-parental immunity and the host-guest limitations are subsidiary issues upon which contribution stands or falls since in this state contribution must be based upon joint or common liability. For the purpose of determining whether a Wisconsin resident involved in a Wisconsin accident can recover contribution from an Illinois wife when her husband sues in Wisconsin, we think the Illinois interest of the preservation of family integrity seems hardly to be in jeopardy and also the interest served by the host-guest statute and parental immunity is scarcely impinged upon.

It is argued the result in *Heath* is controlling here, but under this analysis it sets a pattern for consideration, but it is not controlling. While some of its basic facts are similar, they are not identical, and the method of analysis adopted in *Heath* requires a complete review of all the facts and factors in each case. The result reached, however, is quite consistent with *Heath*.

While in this case we consider our own law to be the better law, we must state it is applied for that reason and not because it is the law of the place of wrong or the law of the forum. All other considerations being the same on this issue, we would apply the law of a nonforum state if it were the better law.

We conclude, therefore, the counterclaim against Helen Zelinger and the third-party complaint against State Farm Mutual state a cause of action for contribution and for that purpose the law of Wisconsin applies and governs the rights and liabilities of the parties relating to the alleged automobile accident.

*By the Court.*—Judgment reversed.