CONKLIN, Respondent, v. HORNER and another, Appellants. [Case No. 251.]

THURLBY, Respondent, v. SAME, Appellants. [Case No. 252.]

*February 28—April 9, 1968.*

470

472

For the appellants there was a brief by *Heide, Sheldon, Hartley & Thom* and *W. A. Sheldon,* all of Kenosha, and oral argument by *W. A. Sheldon.*

For the respondents there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Richard H. Pfeil.*

HEFFERNAN, J.   The defendants' claim is based upon our decision in *Wilcox v. Wilcox* (1965), 26 Wis. 2d 617, 133 N. W. 2d 408, where we abandoned the choice-of-law rule of lex loci delicti and adopted in its stead a more flexible methodology based upon the qualitative analysis of the contacts that one or more jurisdictions might have with the relevant facts.   We adopted the general approach of *Babcock v. Jackson* (1963), 12 N. Y. 2d 473, 240 N. Y. Supp. 2d 743, 191 N. E. 2d 279, 95 A. L. R. 2d 1, and the basic principle of Tentative Draft No. 9, Restatement,[1] *Conflicts of Laws* 2d, which may be denominated as the "center of gravity," "grouping of contacts," "dominant interest," "interest oriented," or "interest analysis" approach. *Zelinger v. State Sand & Gravel Co.,* ante, p. 98, 156 N. W. 2d 466.   We empha-

[1] While we have adopted the general principle of Restatement 2d that a more rational choice-of-law rule than lex loci is desirable, it is apparent that we do not follow the methodology of the Restatement.

sized that what we adopted was not a rule, but a method of analysis that permitted dissection of the jural bundle constituting a tort and its environment to determine what elements therein were relevant to a reasonable choice of law.

When the *Wilcox Case* is so viewed, it is apparent that we cannot conclude that, when one set of facts leads logically to the law of the forum, the reverse, or the apparent reverse, of these facts will lead to the opposite conclusion. It has often been remarked in scientific experimentation that the mere observation of a phenomenon in itself constitutes a relevant fact in the history of the phenomenon. The same is true in a choice-of-law problem, for the observation, or to put it in the *Wilcox* context, the methodology, the analysis, and the evaluation of contacts can only be made by the forum, and the relationship of the forum to the other facts is a significant factor in the analysis. Thus, the exact factual, mirror image in a conflicts case is substantially an impossibility.

The appellants point out that in *Wilcox v. Wilcox* the journey of Mr. and Mrs. Wilcox to California commenced in Wisconsin and was intended to continue until their vacation was ended upon their return to Wisconsin. Using one of the favorite cliches of conflicts jurisprudes, we referred to the happening of the accident in Nebraska as "fortuitous." We stated the automobile was licensed and garaged in Wisconsin and concluded that the protection afforded by the Nebraska guest statute was designed to benefit Nebraska hosts and the host in *Wilcox* was a Wisconsin resident. Since the standard of care required by the guest statute of Nebraska would only penalize gross negligence, we concluded that no Nebraska purpose in promoting safety on its highways would be served by applying the lesser-care standard of the Nebraska law.

We said later in *Heath v. Zellmer* (1967), 35 Wis. 2d 578, 589, 151 N. W. 2d 664, *Wilcox* was an easy case that revealed no serious conflict with the laws of another jurisdiction. We resolved *Wilcox* by resorting solely to the law of Wisconsin, the only concerned jurisdiction.

The reverse situation, argued by the appellants—that Illinois is the only seriously concerned jurisdiction—is not, however, to be found under the facts of this case.

Wisconsin is a seriously concerned jurisdiction. While in *Wilcox*, Nebraska was merely the site of the tort and not the forum, in the instant case, Wisconsin is not only the state where the tortious conduct and the injury occurred—facts that in themselves would compel the use of Wisconsin law under the Bealeian rule of the 1st Restatement—but it is the forum as well. Thus, this court is specially charged as an instrument of the Wisconsin government to further the interests of Wisconsin, if to do so furthers the underlying policies of our law. We are obliged to examine the policies behind the relevant laws to determine qualitatively whether their significance is great enough to warrant finding a serious conflict, which would in turn require making a conscious choice of law, using the "choice-influencing considerations" adopted in *Heath, supra*. In *Wilcox, supra,* page 634, we expressed this duty of the forum court as an instrument of state policy as a presumption, "that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance." [2]

---

[2] While the recent *Zelinger Case, supra,* referred to this presumption as a *"weak* presumption to be used as a starting point" (emphasis supplied), the strength of the presumption is irrelevant, since its only purpose is to trigger the responsibility of the court to carry out the forum state's policy unless it appears that the forum state's policies are unaffected by using a nonforum rule, or unless the facts show that the contacts with the tort are so minimal that the use of forum law would be clearly the result of interloping chauvinism.

It is thus obvious that *Wilcox* is not controlling. This case is not the reverse of *Wilcox,* for the place of conduct, the place of injury, and the forum coincide. Accordingly, the whole gamut of the responsibilities of a concerned forum court come into play.

The law of Illinois allows recovery only if the negligence of the host is "wilful and wanton," while Wisconsin would allow recovery if the host fails to exercise ordinary care. In *Heath* we summarized some of the policy factors motivating a guest statute. We stated in *Heath, supra,* pages 590, 591, that such a statute:

". . . evinces a desire to (a) prevent collusive suits between hosts and guests; (b) prevent the ingratitude of the guest who sues his kindly host (bites the hand that feeds him) ; (c) protect the host from being obligated for more than he bargained for (a judgment when he only offered a ride) ; and (d) keep intact a fund (the host's assets) so it can be reached by other parties to the accident whose claims are assumed to have some vague moral priority over the claims of the gratuitous guest. It is clear that the policy of the Indiana statute is to shield the host, and therefore his insurer, from some liability. The lower standard of conduct (a lesser duty) required in the host-guest situation is for the benefit of defendants.

"The law of Wisconsin imposes liability in the host-guest situation when there is proof of ordinary negligence:

" 'It is the policy of our law to provide compensation to a person when he has been negligently injured. The reasons for this policy are manifold. Among them are that the wrongdoer should bear the cost of an injury because of his causal fault and not the injured party (unless he is equally at fault) or the state authorities or those who have furnished medical services, and that to the extent that damages in a negligence action are punitive, it is hoped that the burden of a judgment may deter like conduct by others.' *Wilcox v. Wilcox, supra,* page 631.

"The purposes of the Wisconsin law are compensatory, admonitory, and deterrent."

If Illinois law is used, the Wisconsin policy of compensating those who are injured by ordinary negligence will be defeated. We stated in *Heath,* at page 601, that our compensatory policy extends to ". . . persons whether they be residents of this state or whether they come from another jurisdiction."

If we accept the Illinois guest law, we accept a legal standard that gives sanction to wrongful conduct. The deterrent effect that it is hoped our negligence laws exercise upon driver misconduct will be defeated by allowing negligent misconduct to go unpunished. This is of particular importance in this case, where the misconduct occurred on a Wisconsin highway.

On the other hand, if Wisconsin law is applied, the Illinois policies of protecting the host and his insurer will be defeated and those whom Illinois would shield will be answerable in damages.

It is thus apparent that a serious conflict arises. Both states have substantial physical contacts with the tort. The place of conduct, injury, and the forum are all in Wisconsin, while the parties and the vehicle came from Illinois and intended to return there. It could arguably be contended that the law of either jurisdiction could apply.

Accordingly, this court is obligated to evaluate the competing laws to determine which is most consonant with the considerations that we have determined to be relevant to the choice of law.

We deem the most reasonable choice to be that suggested by the following "choice-influencing considerations" adopted in *Heath,* initially proposed by Professor Robert Leflar,[3] and first utilized in an appellate decision by Mr. Chief Justice KENISON of New Hampshire.[4]

[3] 41 N. Y. U. L. Rev. (1966), 267, 282, 54 Cal. L. Rev. (1966), 1584.

[4] *Clark v. Clark* (1966), 107 N. H. 351, 222 Atl. 2d 205, 209.

These choice-influencing considerations are:

Predictability of results,
Maintenance of interstate and international order,
Simplification of the judicial task,
Advancement of the forum's governmental interests,
Application of the better rule of law.

As in *Heath, supra,* and *Zelinger, supra,* we find the element of predictability inapplicable under these facts. We said in *Zelinger,* page 108:

". . . the choice-influencing consideration of predictability is minimal . . . since parties do not plan to be negligent or to commit torts relying on interspousal or host-guest immunity. . . ."

Moreover, it can hardly be imagined, in these days of tourism and extensive interstate automobile traffic, that a motor vehicle will be confined strictly to the jurisdiction where it is licensed, garaged, or insured. After all, Winnebago county, Illinois, the residence of both the plaintiffs and the defendant, is located on the Wisconsin border. No doubt, frequent automobile travel in the neighboring state was contemplated by all concerned. As the respondents point out, the appellant insurance company is called the "Nationwide Mutual Insurance Company," a name consistent with the wide territorial area of insurance company responsibility, hardly indicative that it relied solely upon local laws for setting its rates. Moreover, this accident occurred prior to *Wilcox,* when Wisconsin followed the rule of lex loci delicti, and the contemplation of the parties at that time would have been that Wisconsin law would apply if the accident occurred on Wisconsin highways. As we have stated before, however, a tort which is not intended can never, by definition, be the subject of advance planning with reference to a particular state's law.

While we conclude that predictability is not an element of preselection that controls the choice of law in an

automobile accident, we do not thereby mean that there should be any uncertainty in respect to which law should be applied after all the facts relevant to the occurrence are available and subject to analysis. We pointed out that such analysis leads to a reasonable certainty based upon rational considerations as contrasted to the irrational, though certain (as viewed following the adventitious situs of the tort), rule of lex loci.[5]

We are also obliged to consider whether the choice of Wisconsin law will impede the maintenance of interstate order and comity or whether the free flow of persons and commerce between Illinois and Wisconsin will be facilitated by the choice of Illinois law. This criterion requires that a state that is minimally concerned defer to the interests of a state that is substantially concerned. Wisconsin is more than minimally concerned, for the negligent conduct occurred on its highways.[6]

Nor do we think it likely that Illinois' governmental interests are so concerned that retaliatory conduct would ensue. In fact, while in this case, at least, we are willing to accept the premise that the Illinois host-guest law results in a marked difference in the outcome of a particular negligence case, we have strong doubts that this is literally true.

---

[5] The carefully reasoned application of the *Wilcox-Heath* analysis by the trial judge encourages us in the belief of the feasibility of the application of this methodology as an approach to certainty.

[6] One of the hazards that besets any conflicts rule is the possibility of forum shopping. That element is not present here, for the suit was brought in the state where the conduct and injury occurred, a logical place to bring the action.

The plaintiffs' suits in any event were commenced prior to the March 5, 1965, mandate in *Wilcox*. No doubt the Wisconsin forum was chosen not because of any variance in the host-guest law, but because Wisconsin law permits direct suit against a liability insurance company.

The Illinois Personal Injury Jury Instructions provide:

" 'Willful and wanton conduct' means a cause of action which, if not intentional, shows an utter indifference to or conscious disregard for a person's own safety and the safety of others."

However, the decided cases take on a decidedly different flavor.

All studies indicate that the term, "wilful and wanton," refers to a degree of negligence less than that indicated by a literal construction of the term. The commentator in 54 Nw. U. L. Rev. (1959), 263, 267, reviewed recent cases and pointed out the refusal of the Illinois Supreme Court to exactly define the words of the statute, "wilful and wanton." He observed that the court stated that the term expressed an area between ordinary negligence and actual malice. The commentator stated at page 268:

"Whether this was within the contemplation of the legislature or whether it indicates a trend towards compensation for every injury, the Illinois Guest Statute has evolved as something quite different from what the original proponents of guest statute legislation evidently had in mind."

A recent appellate division opinion, *Spivack v. Hara* (1966), 69 Ill. App. 2d 22, 26, 216 N. E. 2d 173, 175, would equate the words of the statute to something akin to ordinary negligence. That opinion stated:

"The words wilful and wanton used in the charge and in the finding against Hara no longer have the connotation of wilfulness or even utter lack of restraint, but have been used to define a vague and somewhat shadowy area close to ordinary negligence. They do not imply that the defendant *intentionally* disregarded the safety of another."

While a fair evaluation of the Illinois cases would lead to the conclusion that something more than ordinary

negligence is generally required to place liability upon a host, yet it is clear that the immunity contemplated by the statute is rendered but grudgingly by the Illinois courts. Wisconsin's position on host-guest is not as much opposed to the position of the Illinois courts as one would conclude from the literal reading of the statute.

We thus see no great violence done to Illinois policy in the event Wisconsin law is applied. However, assuming, as we do, that "wilful and wanton" means just that —negligence substantially in excess of ordinary lack of care—we nonetheless conclude that our interest is not so minimal that the application of Wisconsin law to the case would be merely a matter of forum preference. Moreover, it is obvious that the imposition of liability upon an Illinois host is not likely to reduce the likelihood that Illinois hosts will continue to drive into Wisconsin with their guests. We see no burden upon interstate movement as the result of the choice of Wisconsin law.

We pointed out in *Heath* and *Zelinger* that the third choice-influencing consideration—simplification of the judicial task—is of little importance in the host-guest situation. Although the previous discussion indicates some doubt about the exact posture of the Illinois host-guest law, and no doubt we would be surer of our own law, the courts of this state, though more accustomed to trying cases under the law of the forum, would find little difficulty in applying the Illinois law. We said in *Heath, supra,* page 600, "the 'wanton or wilful' test . . . could be applied easily by any Wisconsin lawyer or judge." Additional complications posed by the possible use of Illinois law are so insignificant that they may be ignored.

One of the most relevant considerations is the duty of the courts to further the legitimate governmental policies of the forum. The policy of our tort law is to compensate those who are injured by negligent acts. We pointed out in *Heath,* page 601, that this policy applies to all who come within our borders:

"To deny recovery for ordinary negligence is to defeat Wisconsin's policy of compensating victims of ordinary negligence. It is the policy of Wisconsin to provide compensation to those persons whether they be residents of this state or whether they come from another jurisdiction. To deny nonresidents recovery for damages occasioned by the same tort that creates liability to a resident would not only defeat Wisconsin's policy and its governmental interest, but could perhaps be challenged as a denial of equal protection of the laws to nonresidents." [7]

Mr. Chief Justice HALLOWS stated in *Zelinger, supra,* page 112:

". . . Wisconsin's interest in the nonexistence of such rules [interspousal and host-guest immunity] is to promote the spreading of the risk and fasten liability in torts on a moral basis of fault."

We have also stated that, in addition to the compensatory aspect of our tort law, liability for ordinary negligence is deemed to be admonitory and deterrent in nature. *Heath, supra,* page 591. We stated therein, at page 602, that to employ the Indiana host-guest law:

". . . would remove the deterrent effect of our law of negligence, while the choice of Wisconsin law would further this state's interest in regulating conduct on Wisconsin highways and penalizing that conduct when it is negligent. It would promote safe driving on Wisconsin highways."

To the extent that our laws of negligence serve that purpose, this court would seriously breach its duty to its forum obligations by applying a foreign host-guest rule when the Wisconsin rule of ordinary negligence could reasonably be applied. Wisconsin is a tourist state, and large numbers of vehicles from immunity jurisdictions

---

[7] *See* Cavers, *The Choice-of-Law Process,* note 8, page 144:
"An affirmative answer to this question seems called for not only by the Equal Protection Clause but, in the case of the citizen of a sister state, by the Privileges and Immunities Clause."

visit our state each year. In 1965, 14,213 out-of-state vehicles were involved in accidents in Wisconsin. Twenty-nine percent of these, or 4,129, were from Illinois. In 1966, 21,699 of all the vehicles involved in Wisconsin's accidents were from out of state. Seventeen percent of these, or 3,655, were Illinois automobiles.[8] It is apparent that we are dealing with an area of major concern to the state of Wisconsin. While it is obvious that the host-guest rule may not be relevant to all or to even a large number of these instances (statistics are not available), the concern of this court that the application of a rule that would, in its potential, substantially dilute the deterrent (as well as the compensatory) effect of our negligence law is obviously well founded. Our legislature has recently spoken out strongly for strict enforcement of highway safety rules. In ch. 292, Laws of 1967, it referred to the "immensity of the state's traffic problem" and called for "rigid enforcement" of all traffic laws. The preamble of this new legislative act concluded:

"The gravity of the problem, and the devastating power of the machine no longer permits countenance of the myriad excuses of *careless* drivers which were, in an earlier day, tiresome, but which now become lethal." (Emphasis supplied.)

It is in the interest of this state and of its citizens to retain where possible those laws which require motorists to refrain from acts of ordinary negligence.

We also conclude that Wisconsin's law is the "better law" to apply under the circumstances. We have in *Heath, supra,* and *Zelinger, supra,* pointed out that the guest statutes are anachronistic vestiges of the early days of the development of the law-of-enterprise liability and do not reflect present day socioeconomic conditions. Earlier in this opinion we said the application of the host-guest rule defeats the Wisconsin objective of high-

---

[8] *Wisconsin Accident Facts*, published by Wisconsin Motor Vehicle Department in 1965 and 1966.

way safety. We also conclude that such a law is bad law, for its application in those states where a legislature has put a guest law in effect results in a haven—a sanctuary —for those who wrongfully cause harm with impunity. We see only legal retrogression in extending the pernicious effects of such a law to Wisconsin.[9]

We emphasize that we prefer the Wisconsin rule of ordinary negligence not because it is Wisconsin's law, but because we consider it to be the better law. In three cases within a year, *Heath, Zelinger,* and this case, we have preferred Wisconsin law, but it should be noted that the merits of the competing rules of law were carefully considered, and the choice was made not as a matter of parochial preference but in the honest belief that, given the opportunity to apply either a forum or nonforum law, the better law in each case proved to be that of the forum. We said in *Zelinger, supra,* page 113, "we would apply the law of a nonforum state if it were the better law."[10]

---

[9] An excellent article appearing in Vol. 2, No. 1, Portia L. J. (1966), 105, 112, points out that while a purpose of the guest statute is to prevent collusive suits:

". . . the guest rule is no bar to the driver and his guest . . . conspiring to trump up simple negligence. But the guest rule *is* a bar to the honest guest who, after having been injured by the negligence of his host-driver, is unwilling to perjure himself."

As we pointed out in *Heath,* to the extent that the rule is for the purpose of preventing collusion, the concern is primarily that of the forum. Our experience in Wisconsin leads us to conclude that the rule of ordinary negligence does not encourage collusive suits.

[10] In *Peterson v. Warren* (1966), 31 Wis. 2d 547, 143 N. W. 2d 560, the first Wisconsin conflicts case to follow *Wilcox,* we preferred Minnesota law. While the analysis did not follow the pattern of *Heath,* a careful reading of Mr. Justice WILKIE'S opinion makes clear the overtones of the "better law" rationale. *See* Ehrenzweig, *Private International Law* (Oceana Publications, 1967), page 101, for comments on *Peterson v. Warren.*

This analysis leads to the conclusion that Wisconsin, not Illinois, law should be applied to the case.[11] We are satisfied that the contacts of Wisconsin with the tort are substantial and the application of Wisconsin law is fully justified by the facts. We are not mere intruders in a non-Wisconsin situation. The two most relevant choice-influencing considerations lead inevitably to the selection of Wisconsin law. The use of Wisconsin law will significantly advance the interests of the forum, while its nonapplication will be detrimental to Wisconsin's policy; and, in addition, we select Wisconsin's law as the better law and reject that of Illinois as a "creed outworn."

Illinois is not so significantly concerned with this case that its law should replace Wisconsin's better law in derogation of the interests of the forum.

We conclude that the orders sustaining the demurrers to the supplemental answers must be affirmed.[12]

*By the Court.*—Orders affirmed.

---

[11] On oral argument it was urged, were we to find Illinois law applicable, that since Illinois follows the rule of lex loci delicti, Wisconsin law, the place of the tort, would automatically apply. We are not directly faced with the problem, since our choice is Wisconsin law, but it is clear from the cogent statement of Mr. Justice CURRIE in *Haumschild v. Continental Casualty Co.* (1959), 7 Wis. 2d 130, 141, 95 N. W. 2d 814, criticizing the doctrine of renvoi, that, in selecting the law of another jurisdiction, we would not apply the conflict-of-laws principles of another state.

[12] We, of course, are familiar with the New York case of *Kell v. Henderson* (1965), 47 Misc. 2d 992, 263 N. Y. Supp. 2d 647, wherein the New York Supreme Court preferred the law of New York in a case, similar to this one, in which an Ontario resident who was a guest in a car owned and operated by his Ontario host was injured in a collision with a bridge in New York state. The appellate division affirmed ((1966), 26 App. Div. 2d 595, 270 N. Y. Supp. 2d 552) with a summary opinion that failed to articulate the basis for the decision beyond the statement, ". . . that a guest has a cause of action for personal in-

HALLOWS, C. J. (*dissenting*). The majority has overemphasized the Wisconsin contacts and has favored Wisconsin governmental interests and better law in determining that this state had the most significant relationship to the host-guest issue in this personal injury action. Wisconsin has only two contacts, the forum and the place of accident (here, the place of conduct and injury coincide). Illinois has substantial contacts, the domicile of all the parties and the center of the host-guest relation, which is the very issue involved. To paraphrase *Wilcox v. Wilcox* (1965), 26 Wis. 2d 617, 631, 133 N. W. 2d 408, we are concerned with the situation in which the plaintiff guest and the defendant host are Illinois residents who were on a trip which commenced in Illinois and was intended to end there. The policy of insurance was issued by an Illinois licensed company, delivered in Illinois, to afford coverage on an automobile licensed in Illinois and usually garaged and operated in Illinois.

Of the five choice-influencing considerations, we have little difficulty with predictability and the simplification of the judicial task. They are of little significance in tort cases. However, predictability was stressed as being most important in an antenuptial-agreement case which adopted the grouping-of-contacts theory for con-

---

juries against a host in an accident occurring within this State whether those involved are residents or domiciliaries of this State or not." To our knowledge, this case has not yet reached (will it ever?) the New York Court of Appeals.

We have, however, noted with interest the comments appearing in 67 Colum. L. Rev. (1967), 459, *Two Views on Kell v. Henderson;* the references to *Kell* in Professor Ehrenzweig's comprehensive conflicts treatise, *Private International Law* (Oceana Publications, 1967); the numerous hypotheses appearing in Cavers, *Choice-of-Law Process* (1965), University of Michigan Press; and in the articles of Professor Robert Leflar appearing in 41 N. Y. U. L. Rev. (1966), 267, *Choice-Influencing Considerations in Conflicts Law,* and in 54 Cal. L. Rev. (1966), 1584, *Conflicts Law: More on Choice-Influencing Considerations.* We acknowledge the assistance of these sources in the consideration of this case.

tract issues prior to the application of such rule in *Wilcox* to torts. *See Estate of Knippel* (1959), 7 Wis. 2d 335, 96 N. W. 2d 514. However, on the issue of whether the host-guest law of Illinois should apply to protect the host, the factor of maintenance of interstate and international order has some significance. Illinois may have little basis to be offended when Wisconsin applies its law to protect its own residents in their right to recover in an automobile accident case when an Illinois resident is also involved. This was the situation in *Zelinger v. State Sand & Gravel Co.*, ante, p. 98, 156 N. W. 2d 466.

Illinois, however, is greatly concerned when its law governing a relationship existing solely between its residents is at issue and is not applied to its residents who are temporarily in Wisconsin simply because a court of Wisconsin thinks its law is better than that of Illinois. The court of the forum must not only evaluate the factual contacts in relation to the issue to determine whether they give rise to a legitimate governmental interest but also evaluate the strength of these local concerns or interest in relation to the factual contacts. Thus three ingredients must be weighed with each choice-influencing factor—the factor itself, the importance of the factual contact in relation to the choice factor and the relevancy of both in relation to the precise issue involved.

The facts in the instant case are the converse of *Wilcox v. Wilcox, supra,* and its reasoning for not applying lex loci should be applied to be consistent and to further the hope expressed in that case that, page 635, "on a case-by-case-basis generalizations will soon become apparent and will take its place as a guide to the future to provide a uniform common law of conflicts." If this reasoning were used the place of the accident contact would not support the application of our local concerns to the specific issue. The *Wilcox* reasoning is not to be depreciated, because in truth and in fact the happening of the accident in this case in Wisconsin was fortuitous

and "should not now inure as a windfall to any of the defendants" (plaintiffs, here). The *Wilcox* reasoning also relied on the argument that the law of Wisconsin was the law of the place whose application was "anticipated and insured against," citing Ehrenzweig, *Guest Statutes in the Conflict of Laws—Towards a Theory of Enterprise Liability Under "Foreseeable and Insurable Laws,"* 69 Yale L. J. (1960), 595, 603. Likewise here, in converse, Ehrenzweig's "compelling reasons" would require the application of the Illinois law because Wisconsin law is not a "foreseeable and insurable law." Certainly, the mobility of modern society must be considered but the question is how much compelling force or influence should this factor be given.

The only other factual contact in the instant case is that Wisconsin is the forum, but we said in *Zelinger* that the application of the law of the forum was merely a weak presumption to be used as a starting point in evaluating the choice-influencing factors in relation to the specific issue and not to the tort as a unitary entity. If the advancement of the local concerns of the forum is to be the controlling factor, as the majority seems to indicate, then we have deserted in fact, if not in word, our newly adopted method of deciding choice-of-law questions and are committed to applying the law of the forum because it is always our duty to advance Wisconsin governmental interests and to apply our better law in every conflicts case before us.

I think Illinois contacts and interests in relation to the host-guest issue here presented are substantially greater and more relevant than Wisconsin's. I do not think the underpinnings of contacts of forum and place of accident on these facts are sufficient to entitle non-residents to reject the governmental interest of their domicile state and the law under which their relationship was created and to claim what we consider and undoubtedly the plaintiff considers to be the better law.

In *Wilcox v. Wilcox, supra; Heath v. Zellmer* (1967), 35 Wis. 2d 578, 151 N. W. 2d 644; and *Zelinger v. State Sand & Gravel Co., supra,* a Wisconsin resident was involved and was entitled to the protection of the law of his domicile and forum as against Illinois residents claiming the protection of Illinois law. The specific issues were guest-host statutes, parental immunity, and the right to contribution. But in the present case no Wisconsin resident is even remotely involved. I find nothing in *Babcock v. Jackson* (1963), 12 N. Y. 2d 473, 191 N. E. 2d 279; *Dym v. Gordon* (1965), 16 N. Y. 2d 120, 209 N. E. 2d 792; *Macey v. Rozbicki* (1966), 18 N. Y. 2d 289, 221 N. E. 2d 380; or in *Clark v. Clark* (1966), 107 N. H. 351, 222 Atl. 2d 205, which compels the majority decision.

The majority cites *Kell v. Henderson* (1965), 47 Misc. 2d 992, 263 N. Y. Supp. 2d 647, affirmed (1966), 26 App. Div. 595, 270 N. Y. Supp. 2d 552. While *Kell* would decide this case as the majority does, it is not an opinion of the highest court of New York and gives no discussion of its reasoning. True, the several scholars who have commented on *Kell* would seem to affirm the opinion on various grounds. Maurice Rosenberg [1] would apply the New York law to get away from the host-guest law of Ontario on the theory the host domicile should determine the standard of care to his guest unless the place of injury provides a higher standard. Basically, his rule is a preference for the standard of ordinary negligence or what he conceives to be the better rule. Donald T. Trautman,[2] another professor, would also apply New York law because he finds the host-guest statutes obnoxious and reasons there is no real policy against ungrateful guest or collusive suits in Ontario. However,

---

[1] *An Opinion for the New York Court of Appeals,* 67 Colum. L. Rev. (1967), 459.

[2] *A Comment,* 67 Colum. L. Rev. (1967), 465.

he would apply the Ontario law if there were such policies.

Professor Robert Leflar, the creator of the five choice-influencing factors we adopted in *Heath*, states that a jurisdiction committed to the dominant contacts approach to be consistent would have to apply the Ontario law in *Kell* but concludes a New York court would probably think its negligence rule makes better socioeconomic-legal sense than Ontario's host-guest statute and the function of the law in society would be better served by applying New York's rule. Leflar, *Conflicts Law: More on Choice-Influencing Considerations*, 54 Cal. L. Rev. (1966), 1584. This is exactly what the majority has done. This is an example of the homing instinct which Leflar also warns against as a natural tendency of the forum state to favor its own law.

Professor David Cavers seems to favor the rule of preference similar to Professor Rosenberg's and would apply the law of the forum to these facts. *See* Cavers, *The Choice-of-Law Process* (1965), pp. 114–180. However, there is a common thread through the rationale of the reasoning of these professors although each of them has his own theory of a conflict-of-law rule, none of which were adopted in *Heath*. We submit that a consistent application of *Babcock v. Jackson, supra* (*Wilcox* is the Wisconsin equivalent) requires a reversal of *Kell* and a reversal on this appeal. But consistency and logic in the law, while not unknown, are apparently no longer considered a virtue. The majority opinion, which like the professors, concludes the law of the forum should be applied is based upon the premise that the host-guest statute is bad law, serves no legitimate purpose, and should be circumvented. The fifth choice-influencing consideration, the better law, then becomes the paramount if not the controlling factor. But in *Heath* and in *Zelinger*, we made it clear that none of the choice-in-

fluencing considerations standing alone is to be considered controlling.

If we were to follow the Restatement 2d, *Conflicts of Law,* Tentative Draft No. 9, we would apply the law of Illinois to the present facts for the reason that Illinois has more significant relationships to the particular issue here involved than Wisconsin. See sec. 379, comment *b,* and sec. 379 l, comment *f,* where the identical facts of the instant case are given as examples for the application of the nonforum law. The application of the choice-influencing factors should be consistent in every case with respect to the same issue although the relative importance of each factor will vary with the kind of tort or issue involved in relation to the factual contacts. If we are going to be consistent only in applying the law of the forum, then we are merely giving lip service to the new "significant contacts" rule. The result reached by the majority and its reasoning of the overpowering local concerns and better law logically and easily support the rule of the mechanical application of the law of the forum in every case, but this rule was rejected years ago in *Bain v. Northern Pacific Ry.* (1904), 120 Wis. 412, 98 N. W. 241.

I am authorized to state Mr. Justice ROBERT W. HANSEN joins in this dissent.